# Kirk's Appeal.

1. Where an attorney-at-law releases a judgment of his clients without their knowledge or consent, such release is a fraud upon them and does not discharge the lien of the judgment.

2. M. assigned a judgment to H., an attorney-at-law, " to be held by H. as collateral security for the payment of the claim of B. & K., for which claim I have this day given to the said B. & K. three promissory notes." This assignment was recorded. H. afterwards gave a release of this judgment, the record entry being " for value received H. releases from the lien of this judgment the real estate of * * * but does not satisfy the judgment." *Held*, that this record gave sufficient notice of an implied breach of trust to make inquiry a duty, and a purchaser must be affected thereby, and that a release thus executed did not discharge the lien of the judgment.

May 30th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

[Kirk's Appeal.]

Appeal from the Court of Common Pleas of *Blair county :* Of May Term 1878, No. 169.

Appeal by William T. Kirk, surviving partner of Boggs & Kirk, from the decree of the court on the report of the auditor appointed to distribute the fund arising from the sheriff's sale of the real estate of Essington Hammond.

The real estate sold was known as the " Sarah Furnace and Maria Forge property," and was devised by Dr. P. Shoenberger to his five grandchildren, viz., David C., Sarah S., G. Troup, Peter S., and Sophia McCormick, intermarried with William D. Gemmill. The first three each received the one-sixth, and the last two the one-fourth each. On the 27th of November 1867, there were entered in the Court of Common Pleas of Blair county six several judgments, on warrants of attorney, in which Hugh McNeal was the plaintiff, and G. Troup McCormick and Peter S. McCormick were the defendants, and which were liens on the interest of the defendants in that portion of the real estate lying in Blair county. One of these judgments for $5000 was, on the 2d of December 1867, assigned by H. McNeal to E. Hammond, attorney for Boggs & Kirk, " to be held by the said E. Hammond as collateral security for the payment of the claims of Boggs & Kirk, for which claim I have this day given to the said Boggs & Kirk three promissory notes, one at thirty, one at sixty and one at ninety days." On the 13th of June 1868, E. Hammond entered into separate articles of agreement with G. Troup and Peter S. McCormick for the purchase of their interests in the above-mentioned property. He purchased subject to the liens of the McNeal judgments, and obligated himself to pay them. He never obtained a deed from G. Troup McCormick. He did, however, on April 28th 1869, obtain a deed from Peter S. McCormick, and at the same time executed a mortgage to Peter for $10,000. This mortgage, on the 13th of October 1869, was assigned by Peter to W. M. Lloyd. Mr. Hammond, after this date, and prior to the 22d of November 1869, obtained deeds from Sarah S. McCormick, W. D. Gemmill and wife, for a further interest in the property, and also a sheriff's deed for a portion of David C. McCormick's interest, another portion being owned by M. Graver. On the 22d of November 1869, after Mr. Hammond had entered into the agreement to purchase the property, he filed a written paper, releasing the interest of Peter S. McCormick in said property from the lien of the judgment of McNeal, for use of Boggs & Kirk, but stated that the judgment was not to be satisfied. This release was without out the knowledge or authority of his clients, and without any consideration. On the 24th of November 1869 Mr. Hammond executed a mortgage on said Sarah Furnace and Lower Maria Forge to George W. Smith for $40,000. On this mortgage the property was sold on October 20th 1876, to George W. Smith for $56,920,

and which is the fund for distribution.   An auditor was appointed, and it was claimed by G. W. Smith, the mortgagee, that no portion of the fund should be appropriated to the Boggs & Kirk judgments, because of the release of E. Hammond.   Boggs & Kirk contended that the release was by their attorney, without consideration, and without their knowledge or consent, and was not, therefore, binding.   The judgment was revived in due time against both of the original defendants, with notice to E. Hammond as terre-tenant.   The auditor found that Mr. Hammond was, at the time of the release, the attorney of Boggs & Kirk; that it was done without their knowledge and without consideration, and therefore appropriated to the Boggs & Kirk judgment.   Exceptions were filed to the allowance of the judgment, and the court sustained the exceptions, on the ground that there was no record evidence that Mr. Hammond was the attorney for Boggs & Kirk.

The court, inter alia, said:

" The report of the auditor is in the main correct, but I am forced to the conclusion that in one particular he erred.

" While conceding the soundness of his decision, with reference to the assigned judgments (H. McNeal *v.* McCormick, Nos. 154 and 155, Oct. Term 1867), on the assumption that E. Hammond was the attorney of Reigle, Fiester & Co. and Boggs & Kirk, yet there was no evidence on the record, on the 24th November 1869, the date of George W. Smith's mortgage, that Hammond sustained any such relation to them.

" I have looked in vain, in the auditor's report, and through the records of these judgments, for a single fact, which at that date would have suggested knowledge of the relation to the mortgagee, or even have been sufficient to put him on inquiry.   The judgments were assigned to E. Hammond, Esq., to secure notes of Reigle, Fiester & Co., and notes of Boggs & Kirk.   At most he stood in the relation of trustee for these creditors of McNeal, having upon the record the legal title to the assigned judgments, bound to act in good faith toward these, for whose use the judgments were assigned, and accountable personally for any loss sustained by them through his neglect or mismanagement.

" But, with the title thus upon the record, he could, as to third parties, dispose of the assigned judgments, without the consent of Reigle, Fiester & Co. or Boggs & Kirk, and he could release their lien upon the lands of the defendant in the judgments.

" The relation of a mere trustee, and that of an attorney, are in many respects the same, but there is this difference : an attorney secures and collects, he does not manage the trust fund, change the securities, or seek an investment of them.   His powers are fixed by law and are presumed to be known by every one dealing with him in matters affecting his client's securities.

" But there is no such restriction by law upon the powers of an

individual holding the legal title of a judgment; having the legal ownership of the security upon the record, and nothing upon the record tending to show any limitations of his powers, the public can deal with him as the legal owner.

"So here Smith, the mortgagee, as well as Mr. Morrow, the officer who gave the certificate, had a right to infer Hammond's authority to release the lien of these judgments, and, in so doing, they will be protected against subsequent denials of his authority by the equitable owners.

"It is true, the evidence before the auditor on the hearing amply justifies his finding of the fact that Hammond was really the attorney for Reigle, Fiester & Co. and Boggs & Kirk; but the evidence to support this finding is evidence not within the view of Smith when he took the mortgage. It is adduced for the first time before the auditor.

"If the evidence showed knowledge on the part of Smith, or showed facts which should have put him on inquiry, the conclusion of the auditor should be sustained, but the record as it stood on the 24th November 1869, the date of the mortgage, warranted Smith in acting on the belief that Hammond had a right to release the land from the lien of the judgments."

The court, therefore, directed the auditor to reform his report accordingly, and the money appropriated to Boggs & Kirk was applied to mortgage of Peter S. McCormick for the use of William M. Lloyd.

From this decree this appeal was taken.

*H. M. Baldridge*, for appellant.—Hammond had no authority to execute the release, and the evidence, as disclosed by the records, at the date of Smith's mortgage, showed that Hammond was an attorney, or at least disclosed such facts as should have put Smith upon inquiry. A trustee only takes the legal estate where he is intrusted with duties or powers, for the discharge of which it is requisite that he should take it. The assignment of this judgment was in fact to Boggs & Kirk. It is true it is made to E. Hammond as collateral security for Boggs & Kirk, but if he is a trustee, he is but a nominal one. He has no duties to perform, no powers delegated. If a trust, it was a naked dry one, and a bare trustee has no power to defeat the trust by an act done without the assent of the parties beneficially interested: Pratt *v.* Lewis, 4 Whart. 22; Hatz's Appeal, 4 Wright 209; Smith *v.* Tome, 18 P. F. Smith 158. The title should have been investigated before purchase: Hill on Trustees 768, 769, 770. A purchaser from a trustee is bound to inquire into the authority of the trustee: Walsh *v.* Stille, 2 Pars. Eq. Cases 17; Bayard *v.* Bank, 2 P. F. Smith 232.

*Samuel S. Blair*, for appellee.—The entry on the record showed

that Hammond had full power over the judgment.    There was no indication that he was either trustee or attorney for Boggs & Kirk.    He was apparently the owner of the notes, and clothed with the full legal title to the judgment.

Mr. Justice MERCUR delivered the opinion of the court, October 7th 1878.

This contention arises on the distribution of a fund produced by a sheriff's sale of real estate.    The rights of the claimants depend on the effect to be given to a release executed by E. Hammond, of the lien of the judgment on which the appellants claim the money. The judgment was recovered by McNeal. . In the assignment thereof, which he made to Hammond, he declared it was " to be held by Hammond as collateral security for the payment of the claim of Boggs & Kirk, for which claim I have this day given to the said Boggs & Kirk three promissory notes."    This assignment was filed of record.    The prothonotary entered on the docket the substance of the assignment, and added : " see paper filed."    Hammond was an attorney-at-law.    As attorney for Boggs & Kirk he took the notes of McNeal for a debt due them, and accepted the assignment.    He therefore held it for their benefit.    The assignment showed this fact.    As between him and them he had no more right to release the lien of the judgment on lands bound thereby, than he had to give up the notes to the maker without payment.

In conducting a suit, an attorney-at-law has large powers.    After judgment recovered, he may execute a valid receipt on its payment. Yet he cannot sell and assign it without the ratification of his client: Campbell's Appeal, 5 Casey 401.    Nor can he accept land in satisfaction of a debt of his client: Huston v. Mitchell, 14 S. & R. 307 ; Stackhouse et al. v. O'Hara, 2 Harris 88; Stokely v. Robinson, 10 Casey 315.    His authority is limited to the discharge of that professional action which lies at the foundation of the relation of counsel and client.    He has large discretionary power as to the manner and time of prosecuting his client's claim to judgment.    He may order and direct the sheriff in regard to the collection of the execution.    These powers are given to him to protect the rights and advance the interests of his client.    He has no right to release property bound by his client's judgment.    This appears to have been conceded by the learned judge if the record had showed Hammond held the assignment as attorney for Boggs & Kirk.    It is true the record did not distinctly show that fact; yet we think it showed enough to have put the appellee on inquiry, and if so, inquiry thereupon became a duty.    The exercise of common prudence and ordinary diligence, which he was bound to use, would have disclosed to him that Hammond held the assignment as attorney or counsel for Boggs & Kirk : Lodge v. Simonton, 2 P. & W. 439; Cresson v. Miller, 2 Watts 272; Jaques v. Weeks, 7 Id. 261; Walsh v.

Stille, 2 Pars. 17; Hill *v.* Epley, 7 Casey 331. The release itself cannot be found, but the record entry recites "for value received, E. Hammond, Esq., releases from the lien of this judgment the real estate of Peter S. McCormick, but does not satisfy the judgment or any part thereof; see paper filed." Thus the record not only shows the assignment to be for the benefit of Boggs & Kirk, but also that Hammond executed the release without any payment on the judgment. A release, by one who held the legal title only, which proclaimed no payment on the judgment, and presumptively no consideration to the use party, should have put the appellee on inquiry. The language of the record gave sufficient notice of an implied breach of trust to make inquiry a duty. Failing to inquire, he must be affected by the facts which a due investigation would have disclosed. Those facts show Hammond was the attorney of Boggs & Kirk, that this release was a fraud on them; that it was made without their knowledge, and never ratified by them. The learned judge therefore erred in holding that the release, thus executed, discharged the lien.

> Decree reversed, and record remitted, with instructions to decree distribution conformably with this opinion. It is further ordered that the appellee pay the costs of this appeal.