## Susanna DeTurck, Appellant, *v.* Sarah C. Matz, Executrix of Allan J. Matz, deceased.

*Fraud—Liability where one of two innocent persons must suffer.*

Where one of two innocent persons must suffer in consequence of the fraud of a third, he whose employee the fraudulent agent was must suffer rather than the other.

*Principal and agent—Mortgage—Fraud.*

B. was the general agent of T. in the management of her estate.    He collected moneys for her, made investments at his discretion, kept balances in his own bank account, and accounted to her from time to time. Having embezzled some of the funds he covered up the deficiency by procuring a mortgage from M. to T.,which he handed over to her.    M. had bought a house from K. and needed money to pay the balance due on it.    He executed the mortgage in question and delivered it to B. who placed it upon record.    B. did not pay any money but promised to pay it to K. in a few days.    He put K. off, and never paid any money on account of the mortgage.    Subsequently M., without knowledge that the money had not been paid to K., paid the first instalment of interest to B., as agent for T.    B. died before the fraud was discovered.    *Held*, (1) that B. was the agent of T. and not of M.; (2) that T. was bound by the acts of B. in connection with the mortgage, and that these were within the scope of his apparent authority; (3) that even if B. exceeded his authority, T. could not avail herself of the benefit of his acts, and at the same time repudiate his acts, declarations and representations; (4) that M. was not estopped

from alleging a want of consideration for the mortgage; (5) that in law and in fact no consideration for the mortgage had passed, and T. could not recover from M.

Argued March 1, 1897. Appeal, No. 271, Jan. T., 1896, by plaintiff, from judgment of C. P. Berks Co., Feb. T., 1893, No. 11, for defendant, on trial by the court without a jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Scire facias sur mortgage.

By agreement of the parties the case was tried by the court without a jury. ERMENTROUT, P. J., filed the following opinion :

### FINDING OF FACTS.

1. Susanna DeTurck, a maiden lady, advanced in years, is the holder of a mortgage for $1,000 on property of Allan J. Matz, the defendant, No. 929 Moss street, Reading, Pa. It is dated April 2, 1891, payable one year after date, with interest payable semiannually at the rate of five per cent per annum, with bond accompanying. It was signed, sealed and acknowledged by defendant, and recorded April 2, 1891, in mortgage book No. 104, p. 466, and October 1, 1891, payment of $25.00 semiannual interest was made thereon. Default was made in the payment of interest for thirty days after the next payment of interest became due, whereby, by the stipulation of the mortgage, the whole debt became due and payable, and the present suit by scire facias was instituted for its collection.

2. Susanna DeTurck was not present when the mortgage was executed, nor when it was recorded. The plaintiff and defendant were strangers, neither knowing nor seeing the other during the entire transaction. She first knew of the existence of the mortgage and the recording of it April 6, 1891, when it was handed to her by William P. Bard, Esq., a member of the bar, now deceased.

[3. The facts of its execution and delivery are these :

The defendant negotiated with one Joshua Keely for the purchase of the house and lot described in the mortgage, for the sum of $1,700, payable by judgment to Keely for $550, and balance in cash. Needing $1,000 to pay Keely to complete the

purchase, he heard, through Keely, that Bard had a thousand dollars which he had to put out, and that probably he could get it. Subsequently Keely saw Bard, Bard promised to loan, and Keely made arrangements for a meeting at the office of Bard, who, in advance of the meeting, at Keely's suggestion, drew up the deed for the premises, the mortgage in suit and the judgment bond to Keely. Matz, the defendant, and Keely met Thursday, April 2, 1891, at Bard's office, the papers were acknowledged, and immediately thereafter Keely received his bond, delivered his deed, and William P. Bard took the deed and mortgage, went out of his office, and placed both deed and mortgage upon record. The deed was delivered without the $1,000 being paid, the agreement between Keely and Matz being that the money was to be paid over as soon as the papers were fixed. When Bard came back from the courthouse, he said he did not have money enough; Keely and Matz should come in on Saturday (April 4). Matz suggested that it would not be necessary for him (Matz) to come in, that he had some work to attend to at Pottstown; they could fix it up themselves; and it was then agreed between the parties that Matz could go to work at Pottstown, and that Keely should come for the money on Saturday, when Bard would have the full amount. There were present two ladies, unknown to Matz and Keely, who were paying out $850 to Mr. Bard at the time. Mr. Matz supposed at the time one of them was Miss DeTurck. It is admitted that he was mistaken, and that neither of these ladies was Miss DeTurck. Neither Mr. Keely nor Mr. Matz knew until the execution of the mortgage that Miss DeTurck was to be the mortgagee. After the execution of the papers, Matz asked to whom he was to pay the interest, and Bard replied, " You pay that to me; I transact business for her."] [1]

4. On Saturday, as agreed upon, Keely called for the money. Bard said it had not been sent up. He called from time to time for it, but did not receive it. Neither Matz nor Keely received at any time any money either from Bard or Miss DeTurck.

5. On September 3, 1891, Matz paid $25 interest by check to William P. Bard. He paid it to Bard because, upon the execution of the papers, he asked Bard to whom he was to pay the interest, and Bard replied, " You pay it to me, I transact busi-

ness for her." He had no notice nor knowledge that Keely did not receive the money from Bard as promised, and paid the interest of $25 above mentioned to Bard as Miss DeTurck's general attorney and general agent in ignorance of the fact. He did not learn the facts until after the death of William P. Bard, who died ——, 1891, insolvent.

[6. William P. Bard was the general attorney and general agent of Miss Susanna DeTurck for a period of twenty years up to the time of his death. He made her investments, handled and received principal and interest of all her moneys, with very rare exceptions; she being a woman of considerable means, the semiannual interest collected by him ranging from $1,200 to $2,000. He possessed her unlimited confidence, and when principal or interest came in, would receipt for and reinvest as his judgment saw fit without consulting her, and when she came to town would inform her of the fact, handing her papers, and she taking his word as to whether it was right or not. The moneys he handled, collected, and invested, he generally deposited in his own individual account, and was accustomed to make semiannual settlements with her, sometimes by his individual check or by money and checks. Of his practice of placing her moneys in his individual bank account she was at all times fully aware, receiving individual checks in settlement. For a period of at least four months before and after the giving of the mortgage, Miss DeTurck had not handed over to Bard any moneys whatever, but all the moneys coming into his hands during this period were the result of payments to or investments made by Bard as her general attorney and general agent. On April 1 and 2 he received at least $3,246.94, and various other payments between April 1 and 6, 1891. All received were placed, as was his custom, in his individual account. By her acts and conduct she held Bard out as worthy of trust and confidence and as having authority to transact her business relating to the investment of money, the receiving of securities, the making of all contracts and agreements in relation thereto and the collection thereof.] [2]

[7. Bard conceived the idea of embezzling the funds so placed in his hands at least on or before said April 1, and on April 2 he was engaged in fraudulently using said funds for his benefit. As part of this fraudulent scheme he took the bond and

mortgage and fraudulently did what is set forth in finding No. 3, and fraudulently made the representations to Matz and Keely therein set forth. He took said bond and mortgage with the intent then and there formed to use them in deceiving his principal and covering up his embezzlement. In furtherance of his scheme he, on April 6, drew up for his principal a statement purporting to set forth as debits the amounts of interest and principal received, amounting to $3,549.05, and as credits thereon, inter alia, the mortgage and bond of Matz of $1,000, delivering to her the bond and certificate of the recorder that the mortgage was recorded April 2, 1891. She paid no money therefor, but Bard turned over the papers to cover his previous embezzlement of the $1,000. The interest of $25 received by Bard as aforementioned, was never handed over to Miss DeTurck nor in any way accounted for.] [3]

8. Both Matz and Miss DeTurck knew nothing of the fraud that had been practiced by Bard, and only learned of it after Bard's death.

## CONCLUSIONS OF LAW.

[1. Bard was, in law and in fact, the plaintiff's general attorney and general agent during the entire transaction. He did not cease to be such attorney and agent until death, and at no time was he the agent of Matz.] [6]

[2. The plaintiff is bound by the acts, declarations and representations of her agent, Bard, and they were done and made within the scope of his apparent authority.] [7]

[3. Even if he exceeded his authority, she cannot avail herself of the benefit of his act, and at the same time repudiate his acts, declarations and representations.] [8]

[4. The defendant is not estopped from alleging, in defense, a want of consideration for the mortgage in suit and the fraud of Bard.] [9]

[5. In law and in fact, no consideration for the mortgage having passed to the defendant, the plaintiff cannot recover. I therefore find in favor of the defendant.] [10]

In support of these conclusions I will now refer to the decisions which, in my judgment, control the case. In Loudon Savings Fund Society v. The Hagerstown Savings Bank, 36 Pa. 498, it is said, that, "By a general agent, is understood not

merely a person substituted in place of another, for transacting all manner of business, but a person whom a man puts in his place to transact all his business of a particular kind, as to buy and sell certain kinds of wares, to negotiate certain contracts, and the like. An authority of this kind empowers the agent to bind his employer by all acts within the scope of his employment, and that power cannot be limited by any private order or restriction, not known to the party dealing with the agent." In Brooke v. New York, Lake Erie and Western R. R. Co., 108 Pa. 529, it is held, that, "As between principal and third parties, the true limit of the agent's authority to bind the former is the apparent authority with which the agent is invested; but, as between the principal and the agent, the true limit is the express authority or instruction given to the agent. The principal is bound by all the acts of his agent within the scope of the authority which he held him out to the world to possess, notwithstanding the agent acted contrary to instructions. One who authorizes another to act for him in a certain class of contracts undertakes for the absence of fraud in the agent acting within the scope of his authority. The authority of an agent to act for and bind his principal will be implied from the accustomed performance by the agent of acts of the same general character for the principal with his knowledge and consent. These elementary principles are founded on the doctrine that where one of two persons must suffer by the act of a third person, he who has held that person out as worthy of trust and confidence, and as having authority in that matter, should be bound by it." In Am. & Eng. Ency. of Law, "Agency," p. 410 and p. 425, the law of principal and agent is thus stated: "A principal is liable to third parties for whatever the agent does or says; whatever contracts, representations, or admissions he makes, whatever negligence he is guilty of, and whatever fraud or wrong he commits; provided the agent acts within the scope of his apparent authority, and provided a liability would attach to the principal if he was in the place of the agent. The right of the principal is affected and modified to the extent of his responsibility for the acts of his agent, as for declarations, misrepresentations, concealments, and fraud generally of the agent while acting within the scope of his authority." It has also been held by numerous authorities that the principal is bound by the agent's

declarations made at the time, although he exceeded his authority, and the principal cannot avail himself of the benefits of his acts or the fruits of his fraud, and at the same time repudiate his authority or his fraud: Hughes v. First National Bank of Waynesburg, 110 Pa. 428; Keough v. Leslie, 92 Pa. 424; Riddle v. Hall, 99 Pa. 116; Penna. Nat. Gas Co. v. Cook, 123 Pa. 170; and when by false representations the agent induces another to enter into a contract with him, the principal cannot enforce the contract even though the agent had no authority to make the representation: Lycoming Fire Ins. Co. v. Woodworth, 83 Pa. 223. It is contended by the plaintiff that Matz by his mortgage put into the fraudulent hand of Bard the means of perpetrating the fraud, and that, therefore, he should bear the loss, and in support of her position cites the case of Pepper v. Cairns, 133 Pa. 114, and West v. Jones, 1 Sim. (N. S.) 205, reported also in Law and Equity Reports, vol. 3, p. 225. But we do not think that the facts in either case warrant the application sought to be made. In Pepper v. Cairns, Sergeant, trustee of the Pepper estate, sought to enforce a mortgage against Cairns. It appears that Ruhl, a conveyancer, brought to Sergeant, trustee of the Pepper estate, a mortgage which Cairns had executed and placed in his hands for delivery, and Sergeant paid Ruhl the money upon receiving the mortgage from him. Ruhl was not the agent of Sergeant but of Cairns, and Ruhl's possession of the mortgage for the purpose of delivery justified Sergeant in assuming he was authorized to receive the money upon it when he delivered it. The whole evidence showed that Ruhl received the money as agent for Cairns and in that capacity embezzled it. It was strenuously attempted to be shown that Ruhl was the general agent of Sergeant and had handled the money of several estates as such, but the proof of general agency was wanting. In the present case Bard was the general agent of Miss DeTurck and was in no sense Matz's agent. In the case of West v. Jones, the principal placed money in the hands of one, Vaughan, in order that it might be lent to Jones on his executing a mortgage. Jones knew that the principal had placed the money in the hands of Vaughan for that purpose, and with this knowledge chose to execute a mortgage and placed it in the hands of Vaughan without receiving any money. He thereby enabled Vaughan to satisfy the principal that he,

Vaughan, had done what the principal had trusted him to do, and it was held that by reason of Jones's knowledge of all the facts, he must abide the consequences of his act, for he had placed in the fraudulent hand the means of perpetrating the fraud. The case was bottomed on the fact of the knowledge that Jones possessed of the transaction, and this is substantially set forth in the opinion. In the present case there was no such knowledge whatever on the part of Matz. On the contrary, Bard fraudulently said he did not have the money. The case of Sergeant v. Martin, 133 Pa. 122, does present points of similarity to the present case. There Ruhl, a conveyancer, applied on behalf of Martin to Sergeant for a loan upon a mortgage. He agreed to make the loan, and gave Ruhl a check for the money. Some sixteen days after Martin executed the mortgage to Sergeant, giving it to Ruhl, who placed it on record. He received no money on the mortgage. On the contrary, Ruhl embezzled the money. It was held it was clearly competent for the defendant to prove that he never in any manner received any consideration for the mortgage in controversy, and that he never received the check drawn by the plaintiffs in favor of Ruhl. It was left to the jury to find whether, in receiving the money, Ruhl was authorized to act as Martin's agent, and plaintiff did not recover. It is contended that this case rules the present case in favor of the defendant, because whatever money was in Bard's hands came there, not by virtue of the production of the mortgage in suit to Matz at the time or in return for that mortgage, but by virtue of his general authority to invest, collect and reinvest, before the execution of the mortgage.

The case of Wall v. Cockerell, vol. 10, House of Lords Cases (star paging 229), is specially applicable to the facts of this case. It was there held (quoting from the syllabus), that, " Where money is entrusted by A to his solicitor for investment, but without any particular investment being then in contemplation, and is allowed to remain in the hands of the solicitor, the amount becomes a debt due from the solicitor to A. If the solicitor afterwards misapplies the money, and, to cover his fraud, obtains from another client B, upon a false representation, a transfer of B's equitable interest under a previously executed mortgage, no money of A being then paid to B, the

transfer thus obtained may, on B's discovering the fraud, be set aside in equity, for no money of A having been received by B at the time the transfer was executed, no interest passed to A by its execution." The syllabus is a correct statement of the legal principle therein decided. The principles are applicable to every feature of the present case.

*Errors assigned* were (1–3, 6–10) findings of fact and conclusions of law as above, quoting them.

*Isaac Hiester* with him *Horace A. Yundt*, for appellant.—In this case the plaintiff did not confer on Bard the general management of her estate. She kept her own securities and her own bank account and satisfied her own mortgages. She did entrust to him the collection of interest and investment of moneys which were in his hands or which she would place there for that purpose.

When Matz entrusted Bard with the mortgage to deliver it to the plaintiff and to receive from her the mortgage money, he placed himself and intended to place himself in the exact position of the mortgagor in Pepper v. Cairns, 133 Pa. 114; see also Barnard's App., 3 Atl. Rep. 764.

The fact that Bard was the plaintiff's agent for investing money in his hands, did not prevent him from becoming Matz's agent in taking the mortgage to her and getting the money for Matz when he did not have the money in his hands : Pottsville Mut. Fire Ins. Co. v. Fromm, 100 Pa. 347; Wright's App., 99 Pa. 425.

Matz, by executing the mortgage and delivering it to Bard without receiving the money, obviously put it in the power of Bard to cheat his employer by representing to her that he had paid the money over to the party, when in fact he had not done so: West v. Jones, 1 Sim. N. S. 205; Independent Building & Loan Assn. v. Real Est. Title Co., 156 Pa. 181; Fisher v. Knox, 13 Pa. 622; Dewitt's App., 76 Pa. 287; Gordon v. McCarty, 3 Wharton, 407; Buffington v. Bernard, 90 Pa. 63; Epley v. Witherow, 7 W. 163; 2 Herman on Estoppel, sec. 759; Chapman v. Chapman, 59 Pa. 214; Kerr on Fraud and Mistake, 136; Pickard v. Sears, 6 A. & E. 469; Carr v. L. & N. W. R. W. Co., 44 L. J. C. P. 109; Macfarlane v. Giannacopulo, 3 H. & N. 860.

A consideration is sufficient if it arises from any act of the plaintiff from which the defendant or a stranger derives any benefit, if such act is performed by the plaintiff with the assent of the defendant, or by reason of any damage or any suspension of the plaintiff's right at law or equity, or any possibility of loss occasioned to the plaintiff by the promise of another: Hind v. Holdship, 2 W. 104; Beers v. Robinson, 9 Pa. 229; Torrens v. Campbell, 74 Pa. 470; Sergeant v. Aberle, 134 Pa. 613.

*Wm. Kerper Stevens*, of *Stevens & Stevens*, with him *George F. Baer* and *Jefferson Snyder*, for appellee.—The plaintiff having employed a fraudulent agent, must suffer by such fraud rather than Matz: Brooke v. N. Y., Lake Erie & West. R. R., 108 Pa. 529; Loudon Savings Fund Society v. Hagerstown Savings Bank, 36 Pa. 498; Perry v. Holl, 2 De Gex, Fisher & Jones Rep. 38; Bispham's Equity, sec. 217; B. & L. Assn. v. Real Est. Title Co., 156 Pa. 181.

The case of Pepper v. Cairns, 133 Pa. 114, relied on by the appellant, does not apply to the facts in this case.

The case of Sergeant v. Martin, 133 Pa. 122, is, however, very analogous to the case at bar.

The facts in the case of Wall v. Cockerell, 10 House of Lords, 229, are precisely those of this case.

The findings of fact by the court below are conclusive, unless brought before this court by bills of exception to the admissibility of evidence: Com. v. Westinghouse Mfg. Co., 151 Pa. 265; Com. v. Hulings, 129 Pa. 317; Bradlee v. Whitney, 108 Pa. 362; Com. v. Lehigh Valley R. R., 104 Pa. 89; Brown v. Dempsey, 95 Pa. 243; Lee v. Keys, 88 Pa. 175; Jamison v. Collins, 83 Pa. 359.

PER CURIAM, March 15, 1897:

By agreement of the parties, trial by jury was dispensed with and the decision of this case submitted to the court under the provisions of the Act of 1874, P. L. 109. As shown by the record, the issue was carefully and correctly tried by the learned president of the common pleas, whose findings of fact and conclusions of law are concisely and systematically stated. A careful consideration of the record has satisfied us that there is no error in either, and hence the judgment in defendant's favor

must be affirmed.   He was clearly right in holding that in the transactions connected with the execution, delivery, recording, etc. of the mortgage in suit, William P. Bard, since deceased, was the agent, not of the defendant's testator, but of the plaintiff only, and that the latter was bound by his acts, declarations and representations, done and made within the scope of his apparent authority as such agent; and that defendant was not estopped by anything she or her testator had done from setting up the want of consideration for the mortgage and the fraud of plaintiff's agent in the procurement thereof, and hence the plaintiff could not recover.   That conclusion was a proper application of the familiar principle that where one of two innocent persons must suffer in consequence of the fraud of a third, he whose employee the fraudulent agent was, must suffer rather than the other.   There is nothing in either of the specifications of error that requires special notice.

Judgment affirmed.