Starling, Exr., Appellant, *v.* West Erie Avenue Building and Loan Association.

Argued December 6, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frederick H. Starling, Jr.,* P. P., with him *E. Humes Garber* and *James L. Baxter,* for appellant.

*Walter B. Gibbons* and *Byron Hancock,* for appellee, were not heard.

OPINION BY MR. CHIEF JUSTICE KEPHART, January 9, 1939:

This is an appeal from the judgment of the court en banc reversing the judgment of the trial judge, who heard the case without a jury, and entering judgment n. o. v. Appellant, executor of the Starling Estate, which owned a first mortgage on 316 Market Street, Philadelphia, claimed that he entered into an agreement with the attorney for appellee building and loan association, holder of the second mortgage, that appellee, which was foreclosing, should pay the taxes on the property on condition that appellant would not bid at the sheriff's sale, thus avoiding increased costs.

The property was bought in by appellee on April 7, 1930, for $50.00. It thereafter collected the rents, and paid appellant an installment of interest due on the first mortgage. Later, appellee decided to abandon the property, and finally conveyed it to Welcome Stilling on December 29, 1930. The premises were duly registered in her name. Meanwhile, appellant instituted foreclosure proceedings on the first mortgage and purchased the property January 5, 1931. The attorney for appellee who is said to have made the promise to pay the taxes died in July, 1932.

This appeal raises two questions: First, the authority of the attorney to bind his client, the building and loan association; and, second, the liability of that association for taxes for the year 1931, while the property was in the name of Welcome Stilling.

There is no contention that the attorney had express authority from his client to bind it to this agreement, and appellee denies any such authority. We have only then to consider whether an attorney has either implied or apparent authority to so act. While the authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to its accomplishment (Restatement, Law of Agency, section 35), and while an attorney, by virtue of his office, may have broader powers than the ordinary agent to bind his clients by admissions and acts in the course of suit or in the management of the regular course of litigation (*Swartz v. Morgan & Co.*, 163 Pa. 195; *Wilson v. Young*, 9 Pa. 101; *Lynch v. Commonwealth*, 16 S. & R. 368; *Cole v. National Casket Co.*, 101 Pa. Superior Ct. 207), such apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him: see *Zellner v. Murdoch*, 298 Pa. 208; *Stilley v. McNeil*, 219 Pa. 533; *Miller v. Hulme*, 126 Pa. 277; *Rowland v. Slate*, 58 Pa. 196; *Naglee v. Ingersoll*, 7 Pa. 185. He cannot, without express authority, consent to a compromise as to boundaries in the conduct of an action of ejectment and thereby bind his client: *Mackey v. Adair*, 99 Pa. 143; sell or assign a claim: *Rowland v. Slate*, 58 Pa. 196; refund money paid in excess to him for his client: *Miller v. Hulme*, 126 Pa. 277; or extend time of payment upon a conditional verdict: *Beatty v. Hamilton*, 127 Pa. 71. Without express authority he cannot compromise or settle his client's claim: *Dodds v. Dodds*, 9 Pa. 315; *Gray v. Howell*, 205 Pa. 211; *Quest's Estate*, 324 Pa. 230; release real estate from a

lien: *Kirk's Appeal*, 87 Pa. 243; nor settle litigation: *McLaughlin v. Monaghan*, 290 Pa. 74; *Lipschutz v. Lipschutz*, 124 Pa. Superior Ct. 380, 386. The necessity of special authority set forth in these cases, not only denies the existence of implied authority, but also of apparent authority of an attorney to bind his client to such obligations by virtue of his office.

The mere retaining of an attorney to conduct a foreclosure suit would not authorize him to make his client personally liable for taxes due on the premises under circumstances such as here related. The acts proposed to be done by the attorney in all of the cited cases, as well as in the instant case, would be violative of a client's substantive rights, which are not to be surrendered by the attorney merely because he represents his client in a given proceeding. Anyone who deals with an attorney is bound to notice and to inquire into the authority he proposes to exercise. There was no such power given the attorney in this case, nor is there any testimony in this record that would show any right or authority to make the contract in question, and the court below correctly so held. Even assuming the alleged agreement constituted a legal contract capable of ratification, there is no evidence of knowledge on the part of the board of directors, from the time of purchase of the property to the reconveyance to Welcome Stilling, nor evidence of special circumstances which would have put appellee on inquiry as to whether there was such an agreement.

As to the liability of appellee for the 1931 taxes, we stated in *Pennsylvania Company, etc., v. Bergson*, 307 Pa. 44, that taxes are not only a lien upon the property against which assessed, but also a personal charge against the registered or real owner, and that where the taxes are paid by the new owner he may be subrogated to the right of the taxing authority to collect the amount as the personal debt of the person owning the property at the time the taxes accrued. Appellant claims that he was subrogated to the City's right against appellee for

the year 1931, because the sale to Welcome Stilling was made for the express purpose of avoiding liability for taxes, as the registered owner at the date of the assessment. Welcome Stilling was merely holding title as a "straw person."

The law will not permit the real owner to set up an irresponsible party, a straw man, as registered owner while retaining the beneficial interest, and thereby escape the payment of taxes: *Pennsylvania Company, etc., v. Bergson,* 307 Pa. 44; *North Philadelphia Trust Co. v. Heinel Bros., Inc.,* 315 Pa. 385, 387. And the municipality, or one subrogated to its rights, such as the mortgagee who pays the taxes, has rights and remedies against the real or beneficial owner to collect any tax levied. But in this case it does not appear that appellee was the beneficial owner for 1931—the property had been abandoned so far as the collection of rents was concerned and its conveyance to Welcome Stilling was absolute, by a fee simple deed of conveyance. As it appears there was no trust interest remaining in appellee it would not be liable for that year's tax. Nor is there any evidence that would show there was no financial responsibility in the purchaser.

It is not unlawful for one who holds unprofitable property, overburdened with taxes, to convey it to a third party who is willing to take it if the grantor entirely divests himself of all title, claim, or interest therein. It is not necessary that the grantee be financially responsible to take the title. We know of no law which compels a man to subject himself to a heavy burden of taxation by holding property which is worthless or unprofitable. This was the clear tenor of the opinion of the Superior Court in *Wyndmoor B. & L. v. Power B. & L.,* 121 Pa. Superior Ct. 236. "It is never an illegal evasion to accomplish a desired result, lawful in itself, by discovering a legal way to do it": *Tranter v. Allegheny Co. Authority et al.,* 316 Pa. 65, 84.

Judgment affirmed.