## Baumgartner, Appellant, *v.* Whinney.

Argued September 28, 1944. Before KELLER, P. J.,
BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Thomas E. Comber, Jr.,* with him *Pepper, Bodine,
Stokes & Schoch,* for appellant.

*Ward C. Henry,* with him *Swartz, Campbell & Henry,*
for appellee.

OPINION BY RENO, J., November 15, 1944:

Plaintiff sued in trespass to recover for personal
injuries and damages to his automobile sustained in a
collision with a motor truck driven by one of defend-
ant's servants on February 24, 1939. Defendant's affi-
davit of defense denied liability and alleged, as a
counterclaim, an action against plaintiff for damages
to defendant's truck. A settlement was subsequently
agreed upon by persons purporting to act for the par-
ties to the action, and an order was filed with the
prothonotary on February 27, 1940, directing him to

mark the suit "settled, discontinued and ended." On December 3, 1943, defendant's son and administrator filed a petition to strike the words "settled and ended" from the order of discontinuance and to add thereto the words "so far as the claim of the plaintiff is concerned only." The court entered an order striking off the discontinuance, permitting defendant to proceed with the counterclaim, and giving plaintiff an opportunity to refund the $700 received in settlement and proceed to trial on his claim if he chose to do so. From this order plaintiff appealed.

It appears from the depositions taken in support of the petition and rule that when the statement of claim was filed plaintiff was represented by Golder and Kelley, Esqs., and that when defendant received the process he turned it over, as he was required to do by his policy of liability insurance, to Markel Service, Inc., a claim adjustment bureau acting for defendant's insurance carrier. Markel Service, Inc., was represented by Ward C. Henry, Esq., in defending the claim, and Mr. Henry was also employed by defendant to represent him as plaintiff in the counterclaim. When the counterclaim was served it was turned over by plaintiff to his insurance carrier which caused the appearance of William H. James, Esq., to be entered for plaintiff in his capacity as defendant in the counterclaim. The array of counsel, with the interests represented by them, was, therefore, as follows: Golder and Kelley, Esqs., for plaintiff's claim against defendant for personal injuries and property damage, without authority with respect to plaintiff's status as defendant in the counterclaim; Mr. Henry, for defendant, through his insurer, with authority only over the defense of plaintiff's claim against defendant; Mr. Henry, for defendant as plaintiff in the counterclaim, with no express authority to settle the cause of action; and Mr. James, for plaintiff, through his insurer, with authority to defend the counterclaim, but with no control over plaintiff's claim

against defendant for which suit was originally brought. That the parties should be thus dually represented by counsel having mutually exclusive authority is explained by the fact that the matter averred in defendant's counterclaim, as permitted by the Act of April 4, 1929, P. L. 140, §1, 12 PS §412, is in reality a distinct cause of action against plaintiff, and not a mere defense by way of mitigation of his claim, although the two suits may, if the defendant so elects, be tried together. *Beason v. Pierce,* 321 Pa. 398, 184 A. 650.

Thereafter, an adjuster employed by Markel Service, Inc., interviewed Golder and Kelley, Esqs., several times in an attempt to arrive at a settlement. The conversations related to a settlement of plaintiff's claim against defendant, and defendant's counterclaim was not discussed. These conversations having culminated in a settlement, Markel Service, Inc., drew its check to the order of plaintiff, and Golder and Kelley transmitted a written release executed by plaintiff and an order signed by them directing the prothonotary to mark the case settled, discontinued and ended to Markel Service, Inc. It forwarded the order to Mr. Henry with instructions to file it, but upon presenting the order to the prothonotary Mr. Henry was advised that it could not be accepted by that officer until both he and Mr. James had signed it. Mr. Henry and Mr. James signed the order and it was filed, but Mr. Henry's testimony is that he understood the order to pertain merely to plaintiff's claim against defendant, and that he had no intention or authority to settle defendant's counterclaim. His intention, however, was not disclosed to plaintiff or any of his counsel.

Mr. Henry concedes that the order stands in the way of recovery upon the counterclaim. Yet, according to his own testimony, he signed the order only after he had been notified by the prothonotary's office "that because of the existence of a counterclaim the order could not be filed without our [Mr. Henry's firm]

signature and the signature of William H. James, Esq., whose appearance had been entered in behalf of the plaintiff." Thus Mr. Henry's attention was specifically directed to the counterclaim before he signed the order. He was therefore aware of the significance attached to his signature, and if he did not wish to include the counterclaim in the settlement he had ample opportunity to limit the effect of his signature. He cannot now be heard to say that he did not understand the effect of his signature or that he did not intend to settle the counterclaim. In the circumstances here presented, an attorney of his ability and experience must be taken to have understood and intended the legal consequences of his deliberate act.

A plaintiff's discontinuance, without more, does not prevent the defendant from proceeding with his counterclaim. Practice Act of May 14, 1915, P. L. 483, §14, as amended by the Act of April 22, 1929, P. L. 627, §2, 12 PS §431. But a settlement is a contract which may be attacked only for want of consideration or authority or on the usual equitable grounds. *Sale v. Ambler*, 335 Pa. 165, 6 A. 2d 519. True, an attorney has no power, in the absence of express authority, to compromise or settle his client's claim. *North Whitehall Township v. Keller*, 100 Pa. 105. But a client may ratify his attorney's acts; and "an affirmance of an unauthorized transaction may be inferred from a failure to repudiate it": Restatement, Agency, §94. Indeed, a client makes his attorney's act his own if he does not disavow it the first moment he receives knowledge that his attorney has transcended his authority. *Bredin v. Dubarry*, 14 S. & R. 27; *Filby v. Miller*, 25 Pa. 264; *Andersen Coal M. Co. v. Sloan, Howell & Co.*, 46 Pa. Superior Ct. 320; *Smuckler v. DiNapoli*, 62 Pa. Superior Ct. 570. Whenever compromises have been set aside it has appeared that the client has unequivocally repudiated the unauthorized act immediately after learning of it, sometimes within a few days, and

172

always within a reasonable time. See e. g., *Huston v. Mitchell*, 14 S. & R. 307; *North Whitehall Township v. Keller*, supra; *Mackey's Heirs v. Adair*, 99 Pa. 143; *Kissick v. Hunter*, 184 Pa. 174, 39 A. 83.

Here, upon the face of the record, appears an unexplained interval of three years and nine months between the settlement and the petition to set it aside. It is possible, but not probable, that the administrator received his first information of the settlement immediately before he filed his petition, and that his deceased father never had knowledge of the settlement. If so, he should have averred and proved those facts. The administrator was the moving party, and after the lapse of so long a period the burden was upon him to show when he learned of the entry of the order and that he, or his father, who apparently was living at the time the settlement was entered, repudiated the unauthorized act of his attorney immediately after securing information of it. In the absence of such proof, it would be distinctly inequitable to require plaintiff now to litigate the issue. Apart from the possibility that plaintiff's witnesses may not now be available, the requirement that he return the settlement money before proceeding with his action fails to take into account plaintiff's present financial condition which may well be such as to make it impossible for him to contest the issue with defendant's administrator.

Finally, it is to be noted that plaintiff's lips have been sealed by defendant's death. If his case depends upon his own testimony plaintiff's action may be non-suited. His lips might be opened by the testimony of adverse witnesses called to substantiate defendant's counterclaim, but meanwhile his own case would have been lost. We cannot subject plaintiff to this hazard after the lapse of almost four years and upon the unmeritorious showing presented by the petition and depositions.

Order reversed.