James D. Garnet, M.D., Petitioner *v.* Armand D'Alonzo and Anita S. D'Alonzo, his wife, Respondents.

Argued October 9, 1980, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*James Lewis Griffith,* with him *Kevin H. Wright, Griffith & Burr,* P.C., for petitioner.

*M. Mark Mendel,* for respondents.

OPINION BY JUDGE MENCER, December 11, 1980:

Armand D'Alonzo and Anita S. D'Alonzo, his wife, commenced an action on June 7, 1977 under the provisions of the Health Care Services Malpractice Act,[1] alleging that James D. Garnet, M.D., failed to diagnose a carcinoma in the right breast of Anita S. D'Alonzo. The plaintiffs contend that, as a result of the alleged failure of Dr. Garnet to properly diagnose the wife plaintiff's condition, she was required to undergo a surgical procedure whereby her right breast was removed.

On December 5, 1977, a pretrial conference was held before the Honorable HARRY A. TAKIFF. At this conference, the plaintiffs were represented by their counsel, Leonard Silver and Arnold J. Silvers. Settlement negotiations reached an impasse and the conference was concluded.

On September 11, 1978, the case was again listed for a pretrial conference before Judge TAKIFF. Although several specific dollar amounts were discussed, the conference again concluded without a settlement being reached. Several days later, Attorney Silvers telephoned Judge TAKIFF and advised him that his clients would accept $35,000 in settlement of their claims.[2] After consulting with Dr. Garnet's counsel,

---

[1] Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §1301.101 et seq.

[2] On September 11, 1978, Anita S. D'Alonzo went to the office of her then attorneys, Messrs. Silver and Silvers. She was informed that a settlement offer of $25,000 had been made, but this offer was rejected by her. While still at the office, Attorney Silvers informed her that he had just received a revised offer of $30,000. Anita S. D'Alonzo rejected this new offer and contends that Attorney Arnold Silvers then advised her to find another attorney. Two days later she did consult new counsel and, by letter dated

Judge TAKIFF called Attorney Silvers and advised him that the $35,000 was available and that the case was now settled.

Sometime after September 20, 1978, Dr. Garnet's counsel was advised by plaintiffs' counsel that they did not consider the case settled and that the plaintiffs would not execute the required release. Defendant then filed a motion for summary judgment which the Administrator for Arbitration Panels for Health Care denied and this appeal from that denial followed.

Dr. Garnet contends here that Attorney Silvers was cloaked with apparent authority to enter a settlement agreement on behalf of plaintiffs and that a settlement was reached in this case, the terms of which are binding upon the plaintiffs.

The vital question is simply this: Could Attorney Silvers bind the plaintiffs by his action without their knowledge or consent?

In this Commonwealth, the litigant is the complete master of his own cause of action in matters of substance, and he may press his case to the very end regardless of the facts and the law arrayed against him. *Archbishop v. Karlak,* 450 Pa. 535, 299 A.2d 294 (1973). The general rule of law is that the ordinary employment of an attorney to represent a client with respect to litigation does not of itself give the attorney the implied or apparent authority to bind the client with settlement or compromise and that, in the absence of express authority, he cannot do so. *Starling v. West Erie Avenue Building & Loan Association,* 333 Pa. 124, 3 A.2d 387 (1939); *Lodowski v.*

September 15, 1978, she notified Attorneys Silver and Silvers that she was "discharging [them] from further handling [her] case" and requested them to send all of her papers to her new lawyer, M. Mark Mendel, Esquire.

*O'Malley,* 227 Pa. Superior Ct. 568, 307 A.2d 439 (1973); *School District of Philadelphia v. Framlau Corp.,* 15 Pa. Commonwealth Ct. 621, 328 A.2d 866 (1974).

Thus, an attorney cannot, absent express authority, settle litigation. *International Organization Masters, Mates & Pilots of America Local 2 v. International Organization Masters, Mates & Pilots of America, Inc.,* 456 Pa. 436, 318 A.2d 918 (1974). In *Yarnall v. Yorkshire Worsted Mills,* 370 Pa. 93, 96, 87 A.2d 192, 193 (1952) (quoting *Baumgartner v. Whinney,* 156 Pa. Superior Ct. 167, 171, 39 A.2d 738, 740 (1944)), the Court stated: " 'True, an attorney has no power, in the absence of express authority, to compromise or settle his client's claim.' " The addition of certain facts may invest the attorney with authority to settle, but we do not find such facts in the instant case.

Here, there is no contention that Attorney Silvers had express authority from his clients to bind them to a settlement and the plaintiffs deny any such authority. We have only then to consider whether Attorney Silvers had either implied or apparent authority to so act. An attorney has no apparent or implied authority to undertake unauthorized acts which may result in the surrender of any substantial right of the client. The necessity of special authority to settle litigation not only denies the existence of implied authority but also of apparent authority of an attorney to bind his client to a settlement by virtue of his office. *Starling v. West Erie Avenue Building & Loan Association, supra.*

The very nature of a settlement agreement requires the understanding of, and consent to or the ratification by, the respective parties. The instant record discloses none of these. The plaintiffs re-

jected all offers of settlement made known to them and neither knew of, consented to, or approved, the $35,000 offer of settlement in question.

Accordingly, we enter the following

ORDER

AND Now, this 11th day of December, 1980, the order of the Administrator for Arbitration Panels for Health Care, under date of December 18, 1979, denying the motion of James D. Garnet, M.D., for summary judgment is hereby affirmed.