451 A.2d 225

**Philip ROTHMAN**

v.

**Gloria FILLETTE and Ronald Fillette, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 21, 1981.

Filed Sept. 17, 1982.

Petition for Allowance of Appeal Granted Jan. 6, 1983.

---

Alan H. Ross, Philadelphia, for appellants.

Edgar R. Einhorn, Philadelphia, for appellee.

Before BECK, WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants contend the lower court erred in striking an order to settle, discontinue and end appellee's personal injury action. Finding no abuse of discretion, we affirm the order of the lower court.

Appellee, injured in a 1971 automobile accident, brought suit in trespass in 1972. His attorney negotiated with appellants' insurer, and, in 1974, agreed to a $7000 settlement. The attorney delivered a release, accepted a draft, and filed a praecipe to mark the case settled. Unaware of

these events and believing his case would eventually go to trial, appellee maintained contact with his attorney until 1979, when he discovered that the case had been marked "settled", and his attorney had appropriated the settlement proceeds. Appellee immediately engaged a new attorney and promptly petitioned to strike the settlement order. The lower court granted the petition, finding appellee's attorney lacked authority to settle the claim and had forged his client's signature on both the release and draft. This appeal followed.

■ "As between the parties involved, the settlement and discontinuance had the same effect as the entry of a judgment for the defendant in the proceedings." *Sustrik v. Jones & Laughlin Steel Corp.,* 413 Pa. 324, 326–27, 197 A.2d 44, 46 (1964). *Accord, Miller v. Commonwealth, Department of Highways,* 52 Pa. Commonwealth Ct. 127, 129, 415 A.2d 709, 710 (1980). A petition to strike a settlement and reopen a case is addressed to the discretion of the lower court, whose decision will not be reversed absent an abuse of discretion. *Yarnall v. Yorkshire Worsted Mills,* 370 Pa. 93, 87 A.2d 192 (1952) (petition to set aside stipulation settling suit and to reopen case). "[A] settlement is a contract which may be attacked only for want of consideration or authority or on the usual equitable grounds." *Baumgartner v. Whinney,* 156 Pa. Superior Ct. 167, 171, 39 A.2d 738, 739–40 (1944). *Accord, Berg v. Cypher,* 291 Pa. 276, 281, 139 A. 844, 846 (1927) (fraud or imposition); *Greentree Cinemas, Inc. v. Hakim,* 289 Pa. Superior Ct. 39, 42, 432 A.2d 1039, 1041 (1981) (fraud or mistake). Therefore, we must decide whether the court below abused its discretion in holding that appellee could avoid the unauthorized, fraudulent settlement by his attorney.

■ Appellants contend that appellee was bound by the settlement because he had impliedly authorized his attorney's action or is estopped from denying his agency. *See generally, Apex Financial Corp. v. Decker,* 245 Pa. Superior Ct. 439, 443, 369 A.2d 483, 485 (1976) (principal may be liable for acts of agent on the basis of estoppel or express, implied,

or apparent authority). The Pennsylvania rule concerning an attorney's authority, however, is quite explicit: absent express authorization from the client, an attorney cannot compromise his client's claim or release his cause of action, *see, e.g., Tucker v. Tucker,* 370 Pa. 8, 19, 87 A.2d 650, 656 (1952), or settle litigation, *International Organization Masters, Mates & Pilots of America, Local No. 2 v. International Organization Masters, Mates & Pilots of America, Inc.,* 456 Pa. 436, 441, 318 A.2d 918, 921 (1974).[1] *See generally, Archbishop v. Karlak (Senyshyn v. Karlak),* 450 Pa. 535, 539–41, 299 A.2d 294, 296–97 (1973); *McLaughlin v. Monaghan,* 290 Pa. 74, 78, 138 A. 79, 80 (1927); *Township of North Whitehall v. Keller,* 100 Pa. (4 Outerbridge) 105, 108 (1882); *Chambers v. Miller,* 7 Watts 63, 63–64 (Pa.1838); *Lodowski v. O'Malley (Lodowski v. Roenick),* 227 Pa. Superior Ct. 568, 570–573, 307 A.2d 439, 440–41 (1973); *Baumgartner v. Whinney, supra,* 156 Pa.Super. at 171, 39 A.2d at 739; *Garnet v. D'Alonzo,* 55 Pa. Commonwealth Ct. 263, 265, 422 A.2d 1241, 1242 (1980); 2 S. Feldman, *Pennsylvania Trial Guide* § 24.6 (1978). Although "the authority to conduct a transaction includes the authority to do acts incidental to it, usually accompan[ying] it, or . . . reasonably necessary to its accomplishment," and "an attorney, by virtue of his office, may have broader powers than the ordinary agent to bind his clients by admissions and acts in the course of suit or in the

1. Under some limited circumstances, clients have been forced to bear the burden of their attorneys' improper acts. *See, e.g., Williams v. Cook,* 289 Pa. 207, 137 A.2d 232 (1927) (client's prior failure to object to attorney's unauthorized practice of collecting principal payments ratified act and prohibited client from asserting lack of express authority when attorney kept subsequent payment); *Zidek v. West Penn Power Co.,* 145 Pa. Superior Ct. 103, 20 A.2d 810 (1941) (express settlement not invalidated by attorney's forged release and failure to inform client of settlement); *Himes v. Herr,* 3 Pa. Superior Ct. 124 (1869) (longstanding attorney/client relationship warranted assumption that debt could be paid to attorney; client ratified attorney's act by accepting deed from attorney in satisfaction of claim); *Appeal of Scott Township,* 31 Pa. Commonwealth Ct. 505, 377 A.2d 826 (1977) (accepting a $10,000 tax rebate resulting from settlement agreement ratified attorney's unauthorized act). Nothing in the present record, however, indicates that appellee's relationship with his attorney was of the type or duration described in these cases, or that he benefitted from or ratified the settlement.

management of the regular course of litigation," settlement authority must still be expressly granted. *Starling v. West Erie Avenue Building & Loan Association,* 333 Pa. 124, 126–27, 3 A.2d 387, 388 (1939) (citations omitted). "The necessity of special authority set forth in [Pennsylvania] cases not only denies the existence of implied authority, but also of apparent authority of an attorney to bind his client to such obligations by virtue of his office." *Id.,* 333 Pa. at 127, 3 A.2d at 388. *Accord, Lodowski v. O'Malley (Lodowski v. Roenick), supra* 277 Pa.Super. at 572–73, 307 A.2d at 441 (local rule requiring attorney to have full settlement authority does not imply such authority from the attorney's mere presence, it must be "in writing; by his client's presence; or by any other method that brings to the court the knowledge of the client's direct consent to the settlement"); *Garnet v. D'Alonzo, supra,* 55 Pa.Cmwlth. at 265, 422 A.2d at 1242 ("ordinary employment of an attorney . . . with respect to litigation does not itself give the attorney the implied or apparent authority to bind the client with settlement or compromise"). Because appellee's contingency fee agreement with his attorney is silent as to settlement authority, and appellee never extended such authority,[2] the attorney lacked the express authority upon which a binding settlement could rest. Similarly, appellee is not bound to the settlement through agency by estoppel. "Authority by estoppel occurs when a principal by his culpable negligence,

---

**2.** Citing *Murdoch v. Murdoch,* 418 Pa. 219, 210 A.2d 490, appellants contend appellee did not meet his burden of proving fraud. In *Murdoch,* the unsuccessful client had acknowledged and accepted a settlement in 1958 and was attempting to set it aside in 1962. She stated that pertinent information had been withheld from her, and implied that her attorney may have had conflicting interests, causing her to settle her claim for less than one-quarter its value. She offered no proof that the missing information had been sought, or that she would not have been able to obtain it independently, nor did she substantiate her conflict of interest claim. In this case, appellee denies all knowledge of the settlement, and complied with the requirements of Pa.R.Civ.P. 209, by going forward with his deposition after appellants denied the forgery. Appellants were represented at the deposition and did not challenge or rebut appellee's testimony. Although appellee may have been well-advised to introduce expert testimony regarding the forgery or to depose his former attorney, the record adequately supports the lower court finding.

permits an agent to exercise powers not granted to him, even though the principal did know or have notice of the agent's conduct." *Apex Financial Corp. v. Decker, supra* 245 Pa.Super. at 444–45, 369 A.2d at 487. The record is devoid of any evidence supporting agency by estoppel, establishing instead that appellee had acted prudently. Appellee, an individual who did not normally engage in litigation, retained an attorney who had once represented him in an unrelated personal injury action, and regularly inquired about the status of his case. Promptly after discovering his attorney's defalcation, appellee repudiated the purported settlement, and initiated these proceedings to strike the order marking the case settled, discontinued and ended. Consequently, the lower court properly held that appellee could avoid the unauthorized settlement.[3]

3. The amicus curiae contends we should adopt the reasoning of several jurisdictions which do not permit a client to avoid unauthorized, *consummated* settlements. *Seybert v. Robert E. Lee Pontiac, Inc.,* 244 F.Supp. 184 (E.D.Pa.1965) (purportedly applying Pennsylvania law); *Cohen v. Goldman,* 85 R.I. 434, 132 A.2d 414 (1957); *Crouch v. Fisher,* 43 Ga.App. 484, 159 S.E. 746 (1931); *Belheumer v. Thomas,* 78 Vt. 279, 62 A. 719 (1906). *Accord, Parker v. Board of Trustees of Southern Illinois University,* 74 Ill.App.2d 467, 220 N.E.2d 258 (1966) (client bound by judgment based upon stipulations made by attorney without authorization; client's only remedy was to sue attorney). *But cf., Whittier Union High School District v. Superior Court,* 66 Cal.App.3d 504, 136 Cal.Rptr. 86 (1977) (voluntary dismissal set aside but defendant entitled to offset amount paid in settlement against any subsequent judgment for plaintiffs); *Nehleber v. Anzalone,* 345 So.2d 822 (Fla.Dist.Ct.App.1977) (unauthorized, consummated settlement does not bar client's action on underlying claim). We decline to do so for several reasons. In *Crouch,* the Georgia court did not discuss the facts or its reasoning in detail, choosing instead to rely on *Patterson v. Southern Railway Co.,* 41 Ga.App. 94, 151 S.E. 818 (1930), in which the attorney/client relationship was longstanding, giving rise to apparent settlement authority, and the client ratified the settlement by choosing to sue for the amount of money paid his attorney rather than reopening the original action. In *Belheumer,* the client actually signed the release, albeit unaware of its import. 78 Vt. at 280, 62 A. at 720. Only *Cohen* fits squarely within the facts of this instant case, but it was based on Rhode Island agency law, 85 R.I. at 439, 132 A.2d at 417, contrary to the Pennsylvania rule that a principal is not liable for the unauthorized, fraudulent acts of an agent absent the principal's scienter, *Shane v. Hoffman,* 227 Pa. Superior Ct. 176, 324 A.2d 532 (1974). Additionally, this Commonwealth has long required express authority for an attor-

■ Appellants contend also that the lower court disregarded the fact that their insurer, an innocent party, would ultimately bear the loss because neither appellee nor his attorney had offered to restore it to the position it had occupied before the fraudulent settlement.[4] *Cf., Township of North Whitehall v. Keller, supra* (within two days of repudiating unauthorized settlement, client offered to return money). They argue that "[w]here one of two innocent persons must suffer by reason of the fraud of another, the loss must fall on him by whose act the wrongdoer has been enabled to commit the fraud." *Mielcuszny v. Rosol,* 317 Pa. 91, 96, 176 A. 236, 238 (1934) (citations omitted). *Accord, Keller v. N. J. Fidelity & Plate Glass Ins. Co.,* 306 Pa. 124, 135, 159 A. 40, 44 (1932); *Franklin Fire Ins. Co. v. Bradford,* 201 Pa. 32, 38, 50 A. 286, 288 (1901); *Lipman v. Noblitt,* 194 Pa. 416, 418, 45 A. 377, 378 (1900); *DeTurck v. Matz,* 180 Pa. 347, 357, 36 A. 861, 864 (1897); *Rykaczewski v. Kerry Homes, Inc.,* 192 Pa. Superior Ct. 461, 465, 161 A.2d 924, 926 (1960). *See also,* Restatement (Second) of Agency §§ 261, 262 (1958). In *Lipman, DeTurck,* and *Rykaczewski,* the court was determining which of the two parties was the principal of a third party agent. Although *DeTurck* involved an attorney, he was acting as a general agent for the transaction in question. These cases, as well as *Keller* and *Franklin Fire Ins. Co.,* were all governed by general agency law. Both *North Whitehall* and *Mielcuszny* involved attorney/client relationships, an agency which has unique status in Pennsylvania law. In *North Whitehall,* our Supreme Court noted that an attorney's power was specific, not general, and courts could "relieve clients from unwarranted acts of their attorneys." 100 Pa. (4 Outerbridge) at 108, 109. In *Mielcuszny,* our Supreme Court observed that the loss

ney to settle a claim, displacing appellants' and the amicus' reliance upon Seybert, a cursory opinion which misconstrued Pennsylvania precedents. If such longstanding rules are to be abrogated, we believe the decision rests with our Supreme Court.

4. We express no view as to whether any party or appellants' insurer can successfully recover on the instrument for payment over a forged endorsement. *See,* 13 Pa.C.S.A. § 3419(a)(3); *Zidek v. Forbes National Bank,* 159 Pa. Superior Ct. 442, 48 A.2d 103 (1946).

should be borne by the debtors who had failed to ascertain whether the attorney to whom they paid the mortgage principal had the creditor's authorization. 317 Pa. at 95–96, 176 A. at 237–238. *See also, Browne v. Hoekstra,* 279 Pa. 418, 123 A. 861 (1924) (no prior knowledge of third party's tendency to misconduct); *Mynick v. Bickings,* 30 Pa. Superior Ct. 401 (1906) (prudent inquiry). *Accord, Starling v. West Erie Avenue Building & Loan Association, supra* 333 Pa. at 127, 3 A.2d at 388 ("Anyone who deals with an attorney is bound to notice and inquire into the authority he proposes to exercise.") (*dicta*). Nothing in the present record shows either appellants or their insurer attempted to ascertain the attorney's authority before consummating settlement. They might have, for example, required any release to be notarized; requested that appellee personally execute the release in their presence; or obtained, consistent with disciplinary rule 7–104 of the Code of Professional Responsibility, permission to contact appellee to verify settlement. No such efforts were made. Thus, were we to apply the "two innocents" rule, appellants' failure to discharge their own duty to inquire into the attorney's settlement authority would not warrant a reversal of the lower court's order.

Affirmed.