School District of Philadelphia, Appellant, *v.* Framlau Corporation, Appellee.
Framlau Corporation, Appellant, *v.* School District of Philadelphia, Appellee.

Argued October 7, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Martin Horowitz,* for School District of Philadelphia.

*Stephen R. Bolden,* with him *Fell, Spaulding, Goff & Rubin,* for Framlau Corporation.

OPINION BY JUDGE MENCER, December 5, 1974:

Even in this day of widespread cynicism, we, influenced by necessity and practicality, proceed ahead, in nearly every area of our daily lives, on the basis of reasonable assumptions. Such assumptions carry inherent risks that, in any given situation, what nearly always happens will not occur. After excluding death and taxes, we soon come to realize that the unexpected happens with sufficient frequency to rule out the notion that anything is a certainty. The reasonable likelihood that automobiles approaching from another direction will pass by on the proper side of the highway prompts us to use this mode of transportation even in the face of predictable odds that some automobiles, somewhere, under some circumstances, will not be so operated, with resulting accidents and injuries to those involved. Countless other examples of common experiences could be mentioned to reinforce the truism that assumptions made concerning future events, although made in good faith and upon reasonable foundations, carry inherent risks of incorrectness.

This appeal results from the good faith and well-intentioned assumption of the lower court and the attorneys representing the parties to this litigation that the Board of Public Education of the City of Philadelphia would, following the advice and recommendation of its president and its attorney, agree to settle a lawsuit for the sum of $250,000.

The background for this appeal was succinctly set forth by the learned court below in its opinion filed in conjunction with this appeal, and we quote therefrom:

"Plaintiff [Framlau Corporation], a general contractor, entered into a written contract with defendant, School District of Philadelphia, dated April 14, 1969 in the amount of $1,583,000.00 for construction of an addition to the Simon Gratz High School. After a substantial amount of work had been completed, defendant by letter dated May 18, 1971 notified plaintiff that it was terminating the contract, effective May 25, 1971. Thereupon plaintiff commenced an Action in Assumpsit alleging a wrongful unilateral termination of the contract and seeking damages, inter alia, for labor performed and materials supplied; for delay in readying the site for construction and impairing the orderly progress of the work; for extra work required by defendant and performed by plaintiff above and beyond the contract plans and specifications; for unlawful termination and loss of anticipated profits; for loss of plaintiff's bondability; and for consequential damages. Defendant counterclaimed for damages allegedly caused by plaintiff's breach of contract and improper refusal to complete the contract as well as the necessity of obtaining substiute performance.

"The matter came on for trial before the Court and Jury on April 2, 1973. On April 10, 1973, after six days of testimony, which encompassed the entire presentation of plaintiff's case and a partial presentation of the defendant's evidence, counsel for plaintiff and defendant entered into settlement discussions in the presence of the Court. As a result of these negotiations it was agreed that a fair settlement of the litigation would be the payment of the sum of $250,000.00 by defendant to plaintiff. Counsel for defendant, Mr. Horowitz, advised opposing counsel and the Court that he would recommend that settlement figure. Mr. Horowitz communicated by telephone to William Ross, President of the School Board, and thereafter informed plaintiff's counsel and the Court that Mr. Ross agreed with the

recommendation and the case was settled.[1] He indicated to plaintiff's counsel that a check in the amount of $250,000.00 would be forthcoming after approval by the School Board at its meeting on April 25, 1973. Counsel for defendant believed that Board approval would be no problem since the President of the Board had agreed to the settlement. The Court thereupon announced to the jury that the case was settled and discharged them without objection by either counsel.

"On April 25, 1973 a Resolution for Payment to Framlau Corporation for claim Regarding Alterations to Gratz High School was submitted to an Executive Session of the School Board. At that meeting Mr. Thomas, a Board member, requested, and it was subsequently agreed, that the resolution be withdrawn and that Mr. Horowitz report to the Board at a later time regarding the claim. The deposition of Mr. Ross reveals that as of this meeting the members of the Board were aware of the fact that he had authorized Mr. Horowitz to convey the $250,000.00 offer to plaintiff.

"The Board reconsidered a resolution authorizing payment to Framlau Corporation at Executive Session on May 14th. Following a description of the background of the litigation and after a lengthy discussion, the Board agreed to approve the settlement at the next public meeting.[2] However, at the request of a Board mem-

---

[1] A most significant and *undisputed fact* is that Mr. Horowitz also simultaneously informed counsel and the Court that any proposed settlement would have to be approved by the Board of Public Education at a public meeting of that Board. At a hearing on June 29, 1973 before the lower court, Mr. Horowitz testified under oath, without contradiction, that he had informed plaintiff's counsel at the time the case was "settled" that "a settlement had to be approved [by the Board] at a public meeting."

[2] The record establishes that the Board of Public Education of the City of Philadelphia made all decisions and acted only at public meetings and that executive sessions of the Board were held for the purpose of engaging in "freewheeling discussions" and making

ber the matter was again deferred until the next Executive Session on May 21st. Again, at the meeting of the 14th, according to the testimony of Mr. Ross, the members of the Board were aware that he had authorized settlement of the case for $250,000.00, that he had conveyed the authorization to Mr. Horowitz and that Mr. Horowitz had conveyed the offer to plaintiff. The fact that a jury had been discharged and the matter withdrawn from its consideration was not directly discussed with the Board.

"The matter was next considered at a conference of the Board on June 11, 1973 at which time the Board voted 'to have the case tried again.' This decision was promptly communicated to plaintiff's attorney.

"Thereafter, plaintiff filed [a] Petition to Enforce Court Supervised Settlement Agreement. Following an evidentiary hearing, the submission of briefs and oral argument, the Court found that an effective settlement of the litigation had been consummated and issued an Order dated September 17, 1973 directing defendant to pay to plaintiff the sum of $250,000.00 with interest at 6% from the date of the Order.

"The Court found that an enforceable settlement resulted from the above set of circumstances for the following reasons: (1) the President of the School Board had the statutory authority to bind the School District to the compromise settlement of a contractual undertaking; and (2) the Board through its actions and inaction ratified the decision of the President and its attorney." (Footnotes added.)

We must reluctantly disagree with the court below in its conclusion and reject its reasons. The compre-

tentative judgments of pending problems scheduled to receive Board action at future public meetings. Executive sessions are different from the special meetings provided for in Section 423 of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, *as amended*, 24 P.S. §4-423.

hension that only a conditional settlement was reached by the parties and that by law the Board of Public Education, not its president or attorney, had to take action to reach a settlement becomes the legal starting and finishing point of this case.

School districts possess only administrative powers expressly granted by statute or inferred by necessary implication. *Barth v. Philadelphia School District*, 393 Pa. 557, 143 A. 2d 909 (1958); *Wilson v. Philadelphia School District*, 328 Pa. 225, 195 A. 90 (1937). Section 2103 of article XXI of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, *as amended* (Code), 24 P.S. §21-2103, provides that the duty of the board of public education in districts of the first class shall be, *inter alia*, to legislate upon all matters concerning the conduct of the schools within its school district. A majority of the members of a board of school directors constitutes a quorum. Lacking a quorum present at any meeting, the board may not transact any business at such meeting. Section 422 of the Code, 24 P.S. §4-422.

The president of the board presides at all meetings. He may call special meetings at any time. He shall call a special meeting whenever so requested, in writing, by any three members of the board of school directors. Should he fail or refuse so to do, a special meeting may be called at any time by a majority of the legally qualified and acting members of the board. Section 426 of the Code, 24 P.S. §4-426.

A board of school directors, by the affirmative vote of a majority of all its members, is authorized to enter into contracts with others. Section 508 of the Code, 24 P.S. §5-508. A common definition of a contract is an agreement which creates an obligation. P.L.E. *Contracts* §5. A settlement of litigation is a compromise agreement comprised of all the traditional elements of a contract. *See Cohen v. Sabin*, 452 Pa. 447, 307 A. 2d 845 (1973). One who contracts with a school district must,

at his peril, know the extent of the power of the school district's officers in making the contract. *Charleroi Lumber Company v. Bentleyville Borough School District*, 334 Pa. 424, 6 A. 2d 88 (1939). One dealing with the president of a school board is bound to know the extent of the authority to contract given the president by the board and to know that the board of directors may repudiate any contract provision to which it has not assented. *Roland v. Reading School District,* 161 Pa. 102, 28 A. 995 (1894). School directors can bind the district they represent only when they act in their official character and in accordance with the requirements of the Code. *Jackson v. Conneautville Borough School District,* 280 Pa. 601, 125 A. 310 (1924). It is the general rule that where formal action is necessary to bind a school district such a requirement must be met in order to predicate liability. In the absence of a compliance with the applicable statutory provisions pertaining to the mode by which a board of school directors may make a contract, no enforceable contract will result. *Chilli v. McKeesport School District,* 334 Pa. 581, 6 A. 2d 99 (1939).

Here we must keep in mind that the Board never acted relative to the settlement agreement. The appellee, Framlau Corporation, and the court below assert that the actions of the president of the Board and its attorney bound the Board. We must reject this assertion. We again note that the alleged settlement reached in the court's chambers was expressly conditioned on subsequent approval by the Board. Therefore, in fact and in law, no settlement agreement was reached at any time. Next, we would be mindful of the general rule of law that the ordinary employment of an attorney to represent a client with respect to litigation does not of itself give the attorney the implied or apparent authority to bind the client with settlement or compromise and that, in the absence of express authority, he cannot do

so. *Lodowski v. O'Malley*, 227 Pa. Superior Ct. 568, 307 A. 2d 439 (1973).

Although settlements are favored by the law, we restate the admonition of Chief Justice STERN in *Tucker v. Tucker*, 370 Pa. 8, 19, 87 A. 2d 650, 656 (1952), that "ordinarily an attorney cannot, without special authority from his client, compromise the latter's claim, release his cause of action, or surrender any of his substantial rights." Here it is evident that Attorney Horowitz's client was the Board of Public Education and not President Ross. No one contends that the Board authorized its attorney to settle, the assertion being only that President Ross, not a party to the litigation, gave such authorization. It is this feature that distinguishes this case from *Sustrik v. Jones & Laughlin Steel Corporation*, 189 Pa. Superior Ct. 47, 149 A. 2d 498 (1959). No single member of the board is the board itself. School directors can act in an official capacity only when lawfully convened as a body. *Butler v. School District of the Borough of Leighton*, 149 Pa. 351, 24 A. 308 (1892).

It is asserted that President Ross, by virtue of Section 427 of the Code, 24 P.S. §4-427, had authority to authorize the settlement and thereby bind the Board. This section, in pertinent part, reads: "He [the president] shall in no case, except as this section otherwise provides, sign any order for any sum unless the same has first been acted upon and approved by the Board, and the amount thereof and the name of the payee properly inserted. Any orders which shall be for the payment of amounts owing under any contracts which shall previously have been approved by the board, and by the prompt payment of which the district will receive a discount or other advantage, may be signed without the approval of the board first having been secured."

We are not here involved with methods of payment but, rather, with the proposed settlement of a lawsuit. Settlement of litigation is not referred to or mentioned

630

by the provisions of Section 427 and, accordingly, we find that section inapposite to the resolution of the issues of this appeal.

Appellee, Framlau Corporation, urges that we adopt the lower court's conclusion that the sequence of action and inaction by the Board subsequent to April 10, 1973 constituted ratification of the proposed settlement agreement which served as the basis for the discharge of the trial jury. We cannot do so because we view the proposed settlement agreement for what it was in fact; namely, a conditional settlement which had to be accepted and acted upon by the Board. The action of the Board is the basis of liability of the school district. When it is lacking, as in this case, no recovery can be obtained. *Parnell v. School Board of Clymer Borough*, 99 Pa. Superior Ct. 281 (1930). The Board cannot by inaction do what the Code requires action to accomplish.

Appellee strongly contends that *Yarnall v. Yorkshire Worsted Mills*, 370 Pa. 93, 87 A. 2d 192 (1952), controls this case. In *Yarnall*, an action in replevin was commenced to recover 12 looms. A stipulation settling the suit was entered into by counsel and approved by the court. After learning of the settlement, the plaintiff elected to take the net proceeds of a $5000 payment made in accordance with the terms of the settlement. The Court held that, in addition to plaintiff's failure for 20 months to repudiate the settlement, he accepted the benefits of the settlement with full knowledge of its terms. It was held that such action was an election to ratify the unauthorized act of the attorney. The Court explained its holding by quoting from *Presbyterian Board v. Gilbee*, 212 Pa. 310, 314, 61 A. 925, 926 (1905), where the Court said, "It is repugnant to every sense of justice and fair dealing that a principal shall avail himself of the benefits of an agent's act, and at the same time repudiate his authority."

The Board here did not accept any benefits of the proposed settlement and *Yarnall* can thereby be fairly distinguished. Further, being a public body governed by statutory direction as to its administrative powers and actions, the Board's inaction cannot be equated to action under a ratification theory. In *Commonwealth ex rel. Ricapito v. Bethlehem School District*, 148 Pa. Superior Ct. 426, 25 A. 2d 786 (1942), it was held that there was no ratification of an invalid contract, even where the school district made payments under a contract entered into by the president and secretary of the board but not in compliance with the action taken by the board.

Although there may seem to be a measure of hardship in the unfortunate position in which Framlau Corporation finds itself, it must be remembered that it arrived at the dilemma with knowledge of all the attendant facts and circumstances, and it should have realized the danger which it courted by reason of the established mandates of the law and the assumption that the Board would follow the recommendation of its president and attorney and would agree to the settlement of the lawsuit. *See Pittsburgh Paving Company, for use, v. Pittsburgh*, 332 Pa. 563, 3 A. 2d 905 (1938).

Order reversed and appeal of Framlau Corporation dismissed.