## Union Area School District v. Seamans

*Walter A. Kieler*, for plaintiff.
*William A. Hebe*, for defendant.

SHARP, *P.J.*, June 20, 1978—The Union Area School District, hereafter school district, filed a complaint in assumpsit to recover the amount of $7,393.79, together with interest, alleged to have been paid to defendant, David D. Seamans, hereafter Seamans, during a period of sabbatical leave. The school district's claim for reimbursement of salary paid is based on Seamans' failure to return to and remain in school service after his sabbatical as provided in 24 P.S. §11-1168, quoted infra. The matter is now before the court on a stipulation of facts agreed to by the parties.

The pertinent facts as set forth in the stipulation of facts are as follows:

At all times material to this action, Seamans was employed by the school district as a tenured professional employe in the school district's vocational agricultural program.

By school board action on November 22, 1971, Seamans was granted a sabbatical leave commencing July 1, 1972, for the 1972-73 school year.

During his sabbatical, Seamans was to perform, and did satisfactorily perform, consultant services for the school district's vocational agricultural program.

On July 1, 1973, Seamans returned to his position as a professional employe of the school district. At or about the time of his return, he was advised by the school district that the vocational agricultural program was being changed from a two-teacher program, as had existed prior to his application for sabbatical leave, to a one-teacher position with a second teacher to be appointed at the discretion of the school administration. The school board at its July 25, 1973, meeting voted to "continue with two teachers in the Voc-Ag Department with the option of the Administration to schedule the junior teacher at their discretion."

Because of this change in the program, Seamans decided to resign and discussed with the school board at its July 1973 meeting his intent to resign and request that the school board waive any right to seek forfeiture and repayment of sabbatical leave benefits.

At the school board's regular meeting of August 22, 1973, Seamans submitted a letter of resignation, together with a request that the school board waive its right to seek forfeiture of sabbatical leave benefits. The school board acted by tabling the resignation.

By school board action on August 29, 1973, the school district's superintendent was directed to "recalculate the amount due to the Union Area School District from Mr. David Seamans if he does not honor his contract with the Union Area School District following a year's sabbatical leave. (Sec-

tion 1168 School Code) And also to authorize the superintendent to send a letter and statment of the amount due to Mr. David Seamans."

At a special meeting of September 5, 1973, the school board took action "to accept the resignation of David Seamans as a Voc-Ag teacher in the Union Area School District effective September 6, 1973, pursuant to the provisions of the School Code."

Seamans attended the September 5, 1973, meeting and specifically requested that the board in acting on his resignation and waive its right to seek forfeiture of sabbatical leave benefits. The board went into executive session, and when it reopened the meeting, accepted the resignation by the above-quoted action. After the board accepted his resignation, Seamans specifically asked the board whether it had waived its right to seek forfeiture and was told only that his resignation was accepted pursuant to the provisions of the School Code.

## DISCUSSION

The controlling statutory provision with regard to a professional employe's obligation to return to school service after a sabbatical leave of absence is section 1168 of the Public School Code of March 10, 1949, P.L. 30, art. XI, sec. 1168, as amended, 24 P.S. §11-1168, which provides:

"No leave of absence shall be granted unless such person shall agree to return to his or her employment with the school district for a period of not less than one school term immediately following such leave of absence.

"No such leave of absence shall be considered a termination or breach of the contract of employment, and the person on leave of absence shall be

returned to the same position in the same school or schools he or she occupied prior thereto.

"Upon expiration of a sabbatical leave, by consent of the school board, the requirement that the person on leave of absence shall return to the service of the school district or to the same position in the same school or schools that he or she occupied prior thereto, may be waived. If the school board has not waived the obligation to return to school service upon expiration of the sabbatical leave and the employe fails to do so, unless prevented by illness or physical disability, the employe shall forfeit all benefits to which said employe would have been entitled under the provisions of this act for the period of the sabbatical leave.

"If such employe resigns or fails to return to his employment, unless the requirement to return to service is waived by the board of school directors, the amount contributed by the school district under section 1170 of this act to the Public School Employes' Retirement Fund shall be deducted from the refund payable to such employe under existing law and the amount so deducted shall be refunded to the school district by which it was paid."

Seamans admits that he did not remain in employment with the school district for the requisite period under 24 P.S. §11-1168 following his sabbatical. However, he asserts two defenses:

*1. No obligation to return since position was changed.*

Seamans first asserts that prior to his sabbatical there were two teachers in the vocational agricultural department; that after his sabbatical there was only to be one teacher with a second teacher to

be appointed at the discretion of the administration; that this worked a substantial change in his position; and that therefore he had no obligation to return after his sabbatical. This assertion is without merit for two reasons.

First, the facts as stipulated do not show that the vocational agricultural faculty was actually reduced from two teachers to one. The facts show that Seamans returned to his position on July 1, 1973, and that the vo ag department at that time was still a two-teacher department. At that time the school board was merely contemplating the possibility of eliminating one position with the second teacher to be appointed at the discretion of the board. The school board on July 25, 1973, voted to continue with two teachers in the vocational agricultural department with scheduling of the junior teacher to be at the administration's discretion.

Second, assuming arguendo that the school board had eliminated another teacher's position and reduced the number of teachers in the vocational agricultural department from two to one, the teaching position that Seamans returned to would still be the "same position" as he occupied prior to his sabbatical leave. Seamans cites no cases nor could the court find any cases which specifically define what is meant by the language of 24 P.S. §11-1168 requiring that the teacher shall return to the "same position in the same school or schools he or she occupied prior [to the sabbatical]," nor what obligations the teacher is released from if he is not offered the same position.

However, Pennsylvania law is clear that although school boards and directors must act in strict accordance with the School Code (see School Dist. of Philadelphia v. Framlau Corp., 15 Pa.

Commonwealth Ct. 621, 328 A. 2d 866 (1974)), school authorities must be given broad discretionary powers to ensure a better education for the children of the Commonwealth and any restrictions on the exercise of such powers must be strictly construed. See Smith v. Darby School Dist., 388 Pa. 301, 130 A. 2d 661 (1957); Root v. Northern Cambria Sch. District, 10 Pa. Commonwealth Ct. 174, 309 A. 2d 175 (1973).

Numerous cases hold that the tenure provisions of the School Code, of which 24 P.S. §11-1168 is a part, do not infringe upon the general power of the school board to assign employes to particular classes or schools or positions in accordance with its discretion reasonably exercised. See Smith v. Darby School District, supra; Ganaposki's Case, 332 Pa. 550, 2 A. 2d 742 (1938); Bilotta v. Secretary of Education, 8 Pa. Commonwealth Ct. 631, 304 A. 2d 190 (1973); Pearson v. Watkins, 14 D. & C. 2d 205 (1957); 24 P.S. §11-1106. Nor do the tenure provisions of the School Code prevent the abolition of unnecessary positions by the board. See Alberts v. Garofalo, 393 Pa. 212, 142 A. 2d 280 (1958); Charleroi Area School District v. Commonwealth, Sec. of Education, 18 Pa. Commonwealth Ct. 121, 334 A. 2d 785 (1975).

In cases involving the power generally of school boards to reassign teachers or to abolish teachers' positions, the only limitation on the school board's powers is that the work be of a rank or class equivalent to that by which the teacher's permanent status was acquired and one for which the teacher is qualified. See Smith, supra; Charleroi, supra; 24 P.S. §11-1151.

Thus, the other tenure provisions of the School Code, which are restrictions on the school board's

general powers under 24 P.S. §11-1106, are strictly construed so that they do not infringe unduly with the board's power to assign and hire teachers in the best interests of the children of the Commonwealth. 24 P.S. §11-1168 should also be strictly construed so as not to interfere with the reasonable discretion of the board in assignment of teachers. The court therefore holds that abolition of another teacher's position, which might necessitate assumption of greater responsibilities by teachers who remain, does not alter the remaining positions. A teacher returning from a sabbatical leave to a department where one of the other teacher's positions has been eliminated cannot assert on that basis alone that his position is not the same position occupied prior thereto.

2. *Waiver by School Board of defendant's obligation to return to his position.*

Under 24 P.S. §1168, quoted supra, a school board *may* waive the obligation that a professional employe return to school service following a sabbatical leave or permit the employe to resign before the expiration of the one school term required to be served after a sabbatical leave, without requiring reimbursement for benefits received during the sabbatical.

Seaman's second defense asserts that under general contract principles the conduct of the school board at its September 5, 1973, meeting during which his resignation was accepted constitutes such a waiver. Defendant asserts that he made an *offer* to resign at the September 5, 1973, meeting in *exchange for* the school board's waiver of its right to seek forfeiture of leave benefits. He asserts that the board accepted his offer by accepting the

resignation, pursuant to the School Code which allows for waiver of the obligation to return to the service of the school district (see 24 P.S. §11-1168). Therefore, according to defendant, a binding contract was entered into at the time by himself and the board whereby the board agreed to waive forfeiture of benefits.

Defendant asserts, in addition, that even if a valid contract is not found, the school board should be estopped from seeking forfeiture of leave benefits on principles of promissory estoppel. Defendant argues that the school board accepted his offer to resign *which was specifically conditioned upon waiver of forfeiture* and gave an equivocal response to his question as to whether leave benefits forfeiture had been waived. This conduct led him to believe that forfeiture of benefits had been waived, upon which he relied to his detriment. Therefore, according to defendant, even though no binding contract may be found to exist, the board is estopped from seeking forfeiture of leave benefits.

Defendant's arguments are ingenious, but are not borne out by the facts. From the additional documentation furnished the court by counsel for the parties, it clearly appears that the resignation, dated July 1, 1973, was clear, unequivocal and unqualified without qualification or condition attached. The letter of transmittal of the same date to the superintendent requested him to present the resignation to the board at its August 22, 1973, meeting. Like the accompanying resignation, the letter of transmittal contains no reference by phrase, word or color of meaning that the resignation was being conditionally tendered.

There is nothing in minutes of the school board

meetings during the pertinent periods that strengthens defendant's positions. The July 11, 1973, minutes reveal that following an executive session, defendant was recognized and apparently addressed the board, followed by another executive session, and adjournment without any discussion. At the July 25, 1973, meeting the board determined the number of teachers to be employed in the Vocational Agriculture Department. It was at the August 22, 1973, meeting that the resignation was received and tabled, with no record of comment or discussion.

Defendant's letter to the school district, although undated, was apparently mailed on August 27, 1973. This significant document states:

"Mr. Clayton Houk, Supt.
Union Area School District
2106 Camden Avenue
New Castle, Pennsylvania 16101
"Greetings Mr. Houk,

"As I agreed at the board meeting, I would discuss the matter of my sabatical (sic) period and resignation with you. As near as I can calculate the following is a very close appraisal of the situation.

"I received during my absence from July 1, 1972 to June 30, 1973 the sum of $6,084.00. I returned to work July and August of 1973 so 2 months of the repayment period should be deducted. This would amount to approximately $1,102.00. Upon resignation the district would owe me $750.00, the maximum for unused sick leave. This totals $1,852.00 or a repayment figure of $4,232.00. Considering my service to the district and the fact that I functioned as a consultant to the Vo-Ag. program during my year of absence and made numerous visits and performed paperwork relative to the farm

operation, I am asking the board to waive this amount.

"I would also like for you to remind the board that their increased cost last year for Vo-Ag salaries was less than $2,000.00 the difference between my sabatical (sic) pay plus Mr. Beyers' substitute salary as compared to what my salary would have been. I would also like them to consider the fact that they will save on Vo-Ag. salaries this year at least $5,000.00 because of my resignation. This will also be a savings for the next several years. So far as the money paid to the state retirement system, part of that figure was actually a deduction from my salary and should also be deducted from the 'debt' figure if it is claimed. The law specifies a return of this money upon school board request.

"Finally, I would like to say that I feel that the board has 'gotten their money's worth' from my services and I am a bit disturbed that they would appear to be so 'cheap' in relation to the situation, however, I realize that they act on what knowledge they are presented with and you didn't have much to give—I trust this helps clarify the situation.

"Please advise me of their decision on this matter.

Sincerely,
David D. Seamans"

Certainly this does not carry the flavor of a conditional resignation. Rather, it amounts to a mathematical calculation of the amount due, with the request for waiver of this sum. The balance of the letter contains various supportive reasons, economic and otherwise, why the board should waive the repayment. There is not the slightest inference, however, that resignation was or would be offered as a reciprocal of waiver.

In view of this letter, the action of the board at its August 29, 1973, meeting takes focus. The minutes of this meeting read:

"Meryl Rodgers moved to authorize the Superintendent to re-calculate the amount due the Union Area School District from Mr. David Seamans if he does not honor his contract with the Union Area School District following a sabbatical leave (Section 1168 School Code) And also to authorize the Superintendent to send a letter statement of the amount due to Mr. David Seamans. Andrew Semansky seconded the motion and all directors present voted yes (6 yes) The motion carried."

These minutes express the dissatisfaction of the board not only with defendant's calculations, for the superintendent was directed to "re-calculate" the amount due, but to warn defendant that the board would insist on repayment.

The resignation, not having been withdrawn, was at the school board's meeting held September 5, 1973, accepted "effective September 6, 1973."

This evidence alone is indicative of an absolute, unconditional, written resignation. The fact that there was a request that the board exercise its discretion by waiving its right to reimbursement does not create nor imply any conditional offer by defendant. Therefore, Seaman's offer of resignation was not *in exchange for* any promise by the board to waive its forfeiture rights. Rather, Seaman intended to resign in any case, and hoped to have the board in reward for his past service and merits waive its rights.*

---

*The court does not decide whether waiver of forfeiture could properly be made a covenant or condition of a teacher's resignation and whether contract principles would then govern the parties' actions. Here, the offer to resign did not contain such covenant or condition.

Defendant's promissory estoppel argument must fall for the same reason. For promissory estoppel, a party must act or fail to act to his detriment in reasonable reliance upon the promise of another. See Traveler's Insurance Co. v. Hartford Accident and Indemnity Co., 222 Pa. Superior Ct. 546, 294 A. 2d 913 (1972); Restatement, Contracts, §90. Defendant's unconditional resignation indicates an intention to resign whether or not the forfeiture of sabbatical leave benefits was waived by the board. Seamans was not induced to resign because of the board's actions concerning waiver.

The board's actions do not indicate any intent to waive forfeiture. That the board was equivocal in responding to defendant's questions after accepting his resignation is not commendable, but does not establish a waiver. Defendant had several avenues open to him. He could have made waiver an express covenant or condition of his resignation. He could have withdrawn his resignation anytime until its final acceptance on September 5, 1973. He did none of these, and thereby assumed the risk of an unqualified acceptance of his resignation. The court accordingly enters the following

## VERDICT

And now, June 20, 1978, in accordance with the foregoing opinion, judgment is rendered in favor of Union Area School District. Since there was no stipulation of facts upon which an accurate account of defendant's liability could be predicated, and since the pleadings indicate a difference of

---

Further, it is clear that the school board is permitted to waive its right to assert forfeiture of benefits even though no consideration flows back to it in exchange for the waiver (24 P.S. §11-1168).

opinion as to damages suffered, it is hereby ordered that unless the parties stipulate as to the appropriate figure amount due in damages, within 15 days of the date of this verdict, a hearing will be scheduled by the court for the purpose of taking testimony on the issue of damages.