512 A.2d 1343

Cadchost, Inc. *v.* Mid Valley School District. Underwood Realty Co., Inc., *v.* Mid Valley School District. Mid Valley School District, Appellant.

Argued February 6, 1986, before Judges MACPHAIL, DOYLE and COLINS, sitting as a panel of three.

*Lawrence J. Moran,* for appellant.

*John J. Brazil, Jr.,* for appellees.

OPINION BY JUDGE DOYLE, July 24, 1986:

Mid Valley School District (School District) appeals from the order of the Court of Common Pleas of Lack-

awanna County which denied the School District's motion for a new trial and let stand a judgment against the School District in the amount of $32,345.00.

The matter before us involves a series of negotiations undertaken by the School District in order to purchase land for the construction of a new secondary school building. In 1978, the School District entered into an option agreement with Cadchost, Inc. and Underwood Realty Co., Inc. (Appellees) for the purchase of from 70 to 168 acres of land at $2,000 per acre. Initially, an agreement for the purchase of 102.5 acres was proposed, but it was never finalized. Later, as a result of additional negotiations, the parties agreed that the School District would purchase 51.8 acres of land, with the provision that Appellees reimburse the School District for the expense of constructing an alternate sewer system to provide service to Appellees' remaining land. Due to legal action taken against the School District at this time,[1] however, this agreement was also never completed, and further negotiations were suspended.

Thereafter, the School District requested that the Appellees make another offer. On June 21, 1979, Appellees sent a letter to the School District's solicitor proposing three alternatives as their final offer. The solicitor presented these proposals to the School Board at an unofficial work session held by the School Board between June 17 and June 25, 1979, at which time at least seven of the nine Board members attended. After considering each of the three alternatives, the School Board decided to accept the proposal which offered the sale 52.7 acres at $2,000 per acre conditioned upon the School District itself bearing the cost of constructing

---

[1] An action was filed against the School District by the Mid-Valley Taxpayers' Association, resulting in the issuance of a preliminary injunction halting any further action on the proposed school construction.

the alternate sewer plan which would run adjacent to, and service, Appellees' remaining land.[2] The School Board directed its solicitor to accept this proposal, and on June 29, 1979, the solicitor closed the agreement with Appellees' attorney.[3] Thereafter the School District paid the purchase price of $104,000.00, and the deeds were transferred. Construction was then commenced according to a construction contract which included the alternate sewer plan.

In the winter of 1980, the School District abandoned the alternate sewer plan set forth in the agreement on the advice of its architect. Appellees brought an action in assumpsit alleging breach of contract. A jury trial was held, and on February 15, 1984, a verdict was returned in favor of Appellees in the amount of $32,345.00. The School District's motion for a new trial was denied on July 12, 1985, and this appeal followed.

Before this Court the School District contends that the trial court erred in denying its motion for nonsuit, arguing that the Appellees failed in their burden to establish that a majority of the School Board members approved the contract for the sale of land, and thus a valid contract had not been concluded.[4]

---

[2] The other alternatives offered by Appellees consisted of either purchasing the 52.7 acres at the price of $140,000.00, or acquiring the property through condemnation proceedings.

[3] Under the terms of the agreement, the $6,000.00 paid by the School District for a prior option was not applied to the purchase price. In addition, the attorneys signed an addendum which stated that the Appellees would grant any easement necessary for the construction of the sewer line.

[4] In reviewing a denial of a motion for compulsory nonsuit for insufficiency of evidence, the evidence must be considered in a light most favorable to the plaintiff, and the plaintiff must be given the benefit of every inference and deduction reasonable to be made therefrom. *In Re: Green,* 486 Pa. 613, 406 A.2d 1370 (1979).

It is conceded that the present contract in question does not meet the requirements of Section 508 of the Public School Code of 1949,[5] 24 P.S. §5-508, in that the School Board's approval was not duly recorded by a formal vote in the minutes of a regularly scheduled board meeting.[6] In *Mullen v. DuBois Area School District*, 436 Pa. 211, 259 A.2d 877 (1969), however, the Pennsylvania Supreme Court held that the requirements of this Section of the Code are directory only, and not mandatory. The Court in *Mullen* concluded that the expression of the board members' approval required by statute could be evidenced in ways other than by a formal vote recorded in the minutes, provided that proof from which Board approval is inferred is solid. *Id.* at 216, 259 A.2d at 880. *Rudolph v. Albert Gallatin School District*, 60 Pa. Commonwealth Ct. 456, 431 A.2d 1171 (1981); *Kennedy v. Ringgold School District*, 10 Pa. Commonwealth Ct. 191, 309 A.2d 269 (1973).

The School District contends that Appellees did not meet this high burden of proof in that they presented no evidence which could have supported the conclusion

---

[5] Act of March 10, 1949, P.L. 30, *as amended*.

[6] Section 508 states in pertinent part:

The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:

. . . .

Purchasing, selling, or condemning land.

. . . .

Entering into contracts of any kind, including contracts for the purchase of fuel or any supplies, where the amount involved exceeds One Hundred Dollars ($100).

. . . .

Failure to comply with the provision of this section shall render such acts of the board of school directors void and unenforceable.

that the School Board approved the contract in question. Appellees' evidence on this issue consisted of the testimony of John P. Pesota, Solicitor of the School District during the period the negotiations for the contract were taking place. Pesota testified as follows:

Q: Did you take [the proposals] up with the school board?

A: We had a work session with the school board. . . .

Q: Who was present at—Let me ask you this. Were all the school board members present?

A: Well, I can't recall if all members were present. I believe that they all were. But I—I couldn't say that every member—It's a nine-member board. I can't say that each and every member was there.

Q: A majority of the board was there?

A: I believe most if not all were there. I'd say at least seven.

. . . .

Q: Did the board finally choose one of those offers?

A: Well, it went through the proposal which appeared to be the least cost to the board at the time. That would have involved, essentially, the proposal for the $2,000 per acre, the agreement to bear the cost of the sewer and the $6,000 being—no longer being applied to the purchase price but being, you might say, waived.

Q: They were aware of these conditions?

A: I explained these conditions to the board members, yes.

Q: Did the board authorize you to do anything?

A: The board members at the work session indicated to me that they would prefer this would be followed.

Later, Pesota reiterated:

A: The board authorized me to negotiate the sale of the land on the terms which were spelled out at the work session.

. . . .

Q: Did the board authorize you to accept that proposal?

A: They authorized me to close the land with that proposal. They were in agreement at the work session with that understanding.

This testimony clearly establishes that a majority of the members of the School Board approved of the Appellees' proposal as it was presented to them by their solicitor, and that they authorized the solicitor to enter into the contract under those terms. We believe that this evidence constitutes the type of "solid proof" required under the holding in *Mullen*.

The School District attempts to distinguish the facts in this case from those in *Mullen*, noting that in *Mullen*, the disputed contract was signed by the president and secretary of the board. Although evidence of the Board members' signatures would indeed support a conclusion that there was approval by the Board, there is nothing in the *Mullen* decision which suggests that this type of evidence is necessary to support such a conclusion. Although in the present case the contract for the sale of land was not signed by members of the Board, the Board's solicitor did give unequivocal testimony that the Board approved of the contract and authorized him to enter it and sign it on the School District's behalf.[7] The

---

[7] The agreement was actually the letter of June 21, 1979 as amended, endorsed and signed by the solicitor for the School District and Appellee's attorney as follows:

School District notes that this testimony was disputed by other evidence which attempted to establish that the solicitor was only authorized to *negotiate* a contract with Appellees, and not to bind the Board without its further approval. This was a matter of credibility, however, which was properly submitted to the jury for resolution.

Finally, the School District's reliance on our decision in *School District of Philadelphia v. Framlau Corp.*, 15 Pa. Commonwealth Ct. 621, 328 A.2d 866 (1974), is misplaced. In *Framlau*, we held that a school board was not bound by a settlement agreement which had been accepted by the school board president subject to later ratification by the full board. *Id*. at 628-29, 328 A.2d at 870. We stressed in that case that there could be no enforceable contract against the school district unless the contract had been acted upon and approved by a majority of the board members. *Id*. The facts of the present case are clearly distinguishable, since the evidence here indicates that the Board's solicitor entered the contract on behalf of the School Board only *after* a

---

NOW, this 29th day of June, 1979, John Pesota, Esq. on behalf of the Mid-Valley School District, and John J. Brazil, Esq. on behalf of Underwood Realty Co., Inc. and Cadchost, Inc. do hereby agree to be bound by the above terms as spelled out by letter of June 21, 1979 to Attorney John P. Pesota. It is further agreed between the parties that if there are any easements required for the construction of the sewer to be utilized by the Mid-Valley School District that the Underwood Realty Co., Inc. and Cadchost, Inc. shall agree by easement or deed to provide the necessary papers in order to construct such sewer line.

/s/ John Pesota
John Pesota, Esq.
/s/ John J. Brazil
John J. Brazil, Esq.

The reference to the easement in the addendum makes it clear which alternative the School District was accepting.

193

majority of the members of the Board had authorized him to do so.

In conclusion, therefore, we must find that there was sufficient evidence to allow the case to reach the jury, and that the trial court did not err in denying the School District's motion for nonsuit. Accordingly, we affirm the order of the court of common pleas which denied the School District's motion for new trial.

ORDER

NOW, July 24, 1986, the order of the Court of Common Pleas of Lackawanna County, Docket Nos. 81 Civil 6029 and 81 Civil 6030, dated July 12, 1985, is hereby affirmed.