# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott and Joan Baribault : 
 : 
v. : No. 1211 C.D. 2019
 : Argued: June 12, 2020
Zoning Hearing Board of : 
Haverford Township and : 
Haverford Township : 
 : 
Appeal of: Haverford Township : 


BEFORE: HONORABLE MICHAEL H. WOJCIK, Judge
 HONORABLE ELLEN CEISLER, Judge
 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE WOJCIK                                    FILED: July 13, 2020


Haverford Township (Township) appeals from an order of the Court of Common Pleas of Delaware County (trial court) granting Scott and Joan Baribault's (Landowners) Motion to Enforce Settlement Agreement. The Township argues that the trial court erred by concluding that its Board of Commissioners (Commissioners) entered an enforceable settlement agreement without an official vote at a public meeting as required under the Sunshine Act.[1] For the reasons that follow, we affirm.

## I. Background

This litigation began in 1993-1994, when Landowners filed five separate land use appeals against the Haverford Township Zoning Hearing Board (ZHB) in the trial court in connection with their rental properties located in the Township. The Township is a First Class township and a home rule municipality

---

[1] 65 Pa. C.S. §§701-716.

governed by the Commissioners. The properties are located at 657 Dayton Road; 745 Hathaway Lane; 881-883 Penn Street; 858 Penn Street; and 91 Penn Street (the latter three properties are referred to as the Penn Street Properties). Landowners leased the properties to students attending Villanova University.

In the land use appeals, Landowners challenged a zoning officer's denials of their applications to continue to use the properties as student housing rentals. The zoning officer denied the applications on the basis of the 1989 amendments to the "Haverford Township Housing Code of 1968" (Housing Code) and the "Zoning Ordinance of Haverford, Delaware County, Pennsylvania" (Zoning Ordinance)[2] that define "student housing"[3] and permit such use only when

---

[2] The Housing Code and Zoning Ordinance are chapters of the "General Laws of the Township of Haverford Pennsylvania."

[3] Section 104-4 of the Housing Code defines "student housing" as:

> A living arrangement for a number of students unrelated by blood, marriage or legal adoption attending or planning to attend either undergraduate or graduate programs at colleges or universities or who are on a semester or summer break from studies at colleges or universities or any combination of such persons. The residents of a student home share living expenses and may live and cook as a single housekeeping unit but may also only share access to cooking facilities and not live and cook as a single housekeeping unit. Student homes shall not include fraternities or sororities.

This definition was added to the Housing Code by Ordinance No. 2057 adopted on October 10, 1989. Section 182-106 of the Zoning Ordinance similarly defines "student home" as:

> A living arrangement for a number of students unrelated by blood, marriage or legal adoption attending or planning to attend either undergraduate or graduate programs at colleges or universities or who are on a semester or summer break from studies at colleges or universities or any combination of such persons. The residents of a "student home" share living expenses and may live and cook as a

2

authorized as a special exception by the ZHB.[4]  Landowners sought a declaration

single housekeeping unit but may also only share access to cooking facilities and not live and cook as a single housekeeping unit. Student homes shall not include fraternities or sororities which are nationally recognized and/or chartered and which preexisted passage of this chapter.  Furthermore, this chapter does not apply to property owned and operated by an accredited educational institution.

This definition was added to the Zoning Ordinance by Ordinance No. 2064 adopted on December 11, 1989.

[4] Section 182-202(B)(3)(e) of the Zoning Ordinance provides:

Student home as a special exception, provided that the Zoning Hearing Board shall find that the following standards are met:

[1] The number of persons living in such student home shall not exceed three.  It is the intent of this chapter that any number of persons in excess of three would tend to create an institutional atmosphere.

[2] The student home shall meet the minimum yard setback and lot width requirements for single-family detached dwellings.

[3] No student home shall be located on a lot, any portion of which is closer to another lot lawfully used for a student home, closer than a distance determined by multiplying times 20 the required street frontage for a single-family detached dwelling in the district in which the building is located.

[4] The student home shall have a minimum of 1,850 square feet of building area, exclusive of building area covered by a garage or accessory building.

[5] A minimum of three paved on-site, off-street parking spaces located to the side or rear of the premises and not in the front yard shall be required in addition to those otherwise required for a single-family dwelling.

that the continued use of the properties as student housing rentals constituted a lawful nonconforming use[5] and challenged the constitutionality of the 1989 amendments. The ZHB denied relief without opinion. Landowners then filed five separate land use appeals with the trial court.

In 1994, the trial court issued a stay order with regard to the 657 Dayton Road property staying: all proceedings, the imposition of fines and penalties, and notices, actions and proceedings to evict, quit and vacate the tenants of that property pending resolution of the action concerning the property. Although the stay order was issued with regard to only one of the five properties, the parties treated the stay order as applicable to all five properties. For the next 25 years, Landowners continued to rent all 5 properties to students.

In April 2019, Landowners filed with the trial court a Motion to Enforce the Settlement Agreement (Motion). Therein, Landowners alleged that, in 2018, Landowners and the Township engaged in settlement discussions to resolve the five

---

[6] The owner or manager or agent of the student home shall register such home with the Township as required by Chapter 104, §104-6, of the General Laws of the Township of Haverford, entitled "Housing Standards," and shall comply with the requirements of said chapter, including the yearly registration provisions. If such student home is not registered in accordance with the provisions of Chapter 104, the special exception permit shall expire, and the student home use shall be unlawful.

This section was added to the Zoning Ordinance by Ordinance No. 2064 adopted on December 11, 1989.

[5] Section 182-106 of the Zoning Ordinance defines "nonconforming use" as: "A use, whether of land or of a structure, which does not comply with the applicable use provisions of this chapter or any amendment heretofore or hereafter enacted *where such use was lawfully in existence prior to the enactment of this chapter or amendment*." (Emphasis added.) This was an original provision of the Zoning Ordinance.

4

outstanding land use appeals. In August 2018, at the parties' request, the trial court scheduled a status/settlement conference, at which the following attorneys appeared: Courtney Schultz, counsel for Landowners (Landowners' Counsel), and counsel for the Township (Township Solicitor);[6] William Malone, counsel for the ZHB (ZHB Counsel) was not present.[7] Reproduced Record (R.R.) at 38a. The purpose of the conference was to advise the trial court of the settlement reached by the parties. R.R. at 38a. Thereafter, in October 2018, Landowners' Counsel and Township Solicitor finalized the contours of a settlement. Pursuant to the terms of the settlement, Landowners agreed to relinquish their right to pursue the right to rent two of the five properties to students upon the sale of the properties and following the then-current lease term in exchange for designation of the Penn Street Properties as

---

[6] During the course of the settlement proceedings, the law firm of McNichol, Byrne and Matlawski, P.C., served as Township Solicitor. Review of the record reveals that five of their attorneys participated in the settlement: Kaitlyn T. Searls, Dan McCusker, James Byrne, Kelly Sullivan, and Karen Hill.

In 1993, the Township was represented by Hugh Donahue, who entered his appearance in the 657 Dayton Road land use appeal, but not in the other appeals. Reproduced Record (R.R.) at 49a. There is no record of the Township's formal intervention. In this appeal, Landowners raise an alternative ground for affirmance that the Township, having never intervened in the land use appeals, was not a necessary party to the settlement agreement. *See* Section 1004-A of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11004-A (permitting a township to intervene by filing a notice of intervention within 30 days of a land use appeal); *see also Gilbert v. Montgomery Township Zoning Hearing Board*, 427 A.2d 776 (Pa. Cmwlth. 1981) (despite automatic party status when intervention is sought, a municipality must formally intervene in a land use appeal). However, Landowners voluntarily participated in settlement negotiations primarily with the Township, not the ZHB, and treated the Township as a necessary party throughout the settlement. By their own actions, Landowners have acquiesced to the Township's role in this matter and have waived any argument in this regard.

[7] According to the transcript, ZHB was not present at the conference because it was following the Township's lead, but ZHB's Counsel acknowledges he signed the settlement agreement. *See* Supplemental Reproduced Record (S.R.R.) at 21b.

5

nonconforming uses and special exceptions, thereby allowing the continued and permanent rental of the Penn Street Properties to students.

Landowners alleged that the Commissioners approved the terms of settlement during an executive session of their regularly scheduled meeting on October 9, 2018. At Township Solicitor's request, Landowners' Counsel drafted a Settlement Agreement and Release (Settlement Agreement), which the Commissioners reviewed and approved at a meeting held on November 13, 2018. In December 2018, in response to a query from the trial court regarding the status of the settlement, Landowners' Counsel advised that they were simply waiting for ZHB to approve the Settlement Agreement and that the Township had already approved it; Township Solicitor confirmed this status. In February 2019, Landowners' Counsel circulated the Settlement Agreement, which Landowners signed, to Township Solicitor and ZHB Counsel for their signatures. ZHB Counsel executed the Settlement Agreement on behalf of ZHB, but Township Solicitor never did.

In support of their Motion, Landowners submitted the sworn Affidavit of Landowners' Counsel attesting to the foregoing allegations along with four exhibits. Affidavit Exhibit A was an email from Township Solicitor[8] to Landowners' Counsel, dated October 10, 2018, stating, "The [Commissioners] approved the settlement last night. Would you mind drafting the stipulation? That will need to be approved by the [Commissioners] as well." R.R. at 25a. Affidavit Exhibit B was a draft order approving the stipulated Settlement Agreement, which contained the signatures of Landowners and ZHB Counsel dated February 15, 2019. R.R. at 26a-35a. Affidavit Exhibit C was an email exchange dated December 12, 2018, among the trial court's administrative assistant and counsel for the parties

---

[8] The email is from Attorney Searls. According to her email, October 10, 2018, was her last day of representation. *See* R.R. at 25a.

6

regarding the status of the settlement. R.R. at 37a-38a. In response to the trial court's request for a status update, Landowners' Counsel advised: "We are simply waiting for the [ZHB] to approve the language in the [S]ettlement [A]greement. The Township . . . has already done so." R.R. at 37a. Township Solicitor confirmed the status by replying: "That is correct. Thank you." R.R. at 37a. Affidavit Exhibit D contained additional emails regarding the status of the settlement exchanged among the trial court and counsel in February through April 2019. R.R. at 41a-43a.

In response, the Township argued there was never a valid Settlement Agreement to enforce. Significantly, the Township did not dispute any of the facts alleged and conceded that the Commissioners had approved the settlement and the terms during executive session. However, the Township contends that such action was a nullity because the Commissioners never took "official action" as required by the Sunshine Act or the Haverford Township Home Rule Charter (Home Rule Charter) to officially approve or disapprove the proposed settlement terms at a public meeting. The Township submitted that a review of all public meeting videos and minutes would confirm that the proposed settlement was never placed on the Commissioners' public agenda for a vote. Absent a public vote, there was no lawful acceptance of the settlement terms by the Commissioners. Thus, there is no Settlement Agreement to enforce.

The trial court consolidated the five appeals. R.R. at 93a. On July 29, 2019, following argument on the Motion, the trial court granted the Motion and entered an order to enforce the terms of the Settlement Agreement. The trial court determined that the Settlement Agreement was consummated and was enforceable. The trial court opined that, although the Commissioners did not take official action during a public meeting, the Commissioners nevertheless agreed to settle the

7

litigation during an executive session, which is permissible under the Sunshine Act and Home Rule Charter. Township Solicitor conveyed the Commissioners' decision to Landowners' Counsel. For an enforceable contract to exist, there must be an offer, acceptance, and consideration or a meeting of the minds. The trial court found there was a meeting of the minds among counsel, who were duly authorized to settle the claim. Landowners reasonably relied on the representations of the Township's solicitor regarding settlement. Although the Township never signed the Settlement Agreement, the trial court concluded that the failure to memorialize the agreement has no bearing on its enforceability. From this decision, the Township has appealed.[9]

## II. Issues

The Township contends that the trial court erred by concluding that the Commissioners could approve a settlement agreement, or that Township Solicitor could do so acting on the Commissioners' behalf, when the Commissioners did not take official action on the settlement terms at a public meeting as required under the Sunshine Act and its Home Rule Charter. Settlement agreements must be analyzed according to principles of contract law. Such agreements may only be enforced if a valid and binding contract exists. A valid and binding contract requires a meeting of the minds and acceptance of all material terms by all parties to the contract. In order for the Township to enter a binding contract, the Commissioners must assent

___

[9] When reviewing a trial court's decision to enforce a settlement agreement, an appellate court's scope of review is plenary as to questions of law, and we may draw our own inferences and reach our own conclusions from the facts as found by the trial court. *Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa. Super. 2002). "However, we are only bound by the trial court's findings of fact which are supported by competent evidence." *Id.* "The prevailing party is entitled to have the evidence viewed in the light most favorable to its position." *Id.* "Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous." *Id.*

to the terms and authorize the contract. The Sunshine Act requires that all "official actions" of municipalities occur at public meetings after the opportunity for public comment on the official action is permitted. Although the Commissioners expressed general assent to the proposed settlement terms, the Township maintains that the Commissioners never took official action at a public meeting to approve or disapprove the same. Absent official action, there is no Settlement Agreement to enforce. Township Solicitor lacked authority to enter a settlement on the Township's behalf. Thus, the trial court erroneously granted the Motion.

### III. Discussion

The enforceability of a settlement agreement is determined according to principles of contract law. *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999); *see School District of Philadelphia v. Framlau Corp.*, 328 A.2d 866, 870 (Pa. Cmwlth. 1974) ("A settlement of litigation is a compromise agreement comprised of all the traditional elements of a contract."). To be enforceable, a settlement agreement must possess all the elements of a valid contract -- offer, acceptance, and consideration or a meeting of the minds. *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnik*, 587 A.2d 1346, 1349 (Pa. 1991); *A.S. v. Office for Dispute Resolution (Quakertown Community School District)*, 88 A.3d 256, 265 (Pa. Cmwlth. 2014). "[I]t is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject matter, of the agreement." *Mazzella*, 739 A.2d at 536.

Further, "[a]n oral settlement agreement may be enforceable and legally binding without a writing." *Bennett v. Juzelenos*, 791 A.2d 403, 407 (Pa. Super. 2002). "'Where parties have reached an oral agreement, the fact that they intend to reduce the agreement to writing does not prevent enforcement of the oral

9

agreement.'" *Id.* (quoting *Pulcinello v. Consolidated Rail Corp.*, 784 A.2d 122, 124 (Pa. Super. 2001)).

A party wishing to invalidate a contract must "show fraud or mutual mistake by clear, precise and convincing evidence." *A.S.*, 88 A.3d at 266 (quoting *Holt v. Department of Public Welfare*, 678 A.2d 421, 423 (Pa. Cmwlth. 1996)). "[I]f a mistake is unilateral, there is no basis for rescinding a contract if the unilateral mistake 'is not due to the fault of the party not mistaken but rather to the negligence of the party who acted under the mistake.'" *Id.* (quoting *Holt*, 678 A.2d at 423).

Where one of the parties to the contract is a public entity, other laws may play a role in determining the validity and enforceability of a contract or settlement agreement. *See, e.g., Kennedy v. Upper Milford Zoning Hearing Board*, 834 A.2d 1104 (Pa. 2003) (considering validity of a settlement agreement where a violation of the Sunshine Act was asserted); *Framlau* (considering whether a settlement agreement was enforceable in the context of the Public School Code of 1949 (Public School Code)[10]). In the case here, the Township argues that a valid and enforceable agreement does not exist based on violations of the Sunshine Act and the Township's Home Rule Charter.

Section 704 of the Sunshine Act requires "[o]fficial action and deliberations by a quorum of the members of an agency" to "take place at a meeting open to the public unless closed under section . . . 708 (relating to executive sessions)" or one of the other enumerated exceptions. 65 Pa. C.S. §704. "Official action" is defined as:

> (1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

---

[10] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 - 27-2702.

(2) The establishment of policy by an agency.

(3) The decisions on agency business made by an agency.

(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa. C.S. §703. "Agency business" is defined as "[t]he framing, preparation, making or enactment of laws, policy or regulations, the creation of liability by contract or otherwise or the adjudication of rights, duties and responsibilities, but not including administrative action." 65 Pa. C.S. §703.

Under the executive sessions exception, an agency may hold an executive session "[t]o consult with its attorney or other professional advisor regarding information or strategy in connection with litigation or with issues on which identifiable complaints are expected to be filed." 65 Pa. C.S. §708(a)(4). An "executive session" is "[a] meeting from which the public is excluded, although the agency may admit those persons necessary to carry out the purpose of the meeting." 65 Pa. C.S. §703.

Section 708(c) of the Sunshine Act provides the following limitation on executive sessions:

> *Official action on discussions held pursuant to subsection (a) shall be taken at an open meeting.* Nothing in this section or section 707 (relating to exceptions to open meetings) shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of section 704 (relating to open meetings).

65 Pa. C.S. §708(c) (emphasis added). Similarly, under the Township's Home Rule Charter, the Commissioners may conduct business at an executive session, so long

as those sessions are conducted in accordance with the Sunshine Act. Section 4-203(E) of the Home Rule Charter; R.R. at 89a.

Section 713 of the Sunshine Act governs business transacted at an unauthorized meeting, providing:

> A legal challenge under this chapter shall be filed within 30 days from the date of a meeting which is open, or within 30 days from the discovery of any action that occurred at a meeting which was not open at which this chapter was violated, provided that, in the case of a meeting which was not open, no legal challenge may be commenced more than one year from the date of said meeting. The court may enjoin any challenged action until a judicial determination of the legality of the meeting at which the action was adopted is reached. *Should the court determine that the meeting did not meet the requirements of this chapter, it may in its discretion find that any or all official action taken at the meeting shall be invalid. Should the court determine that the meeting met the requirements of this chapter, all official action taken at the meeting shall be fully effective.*

65 Pa. C.S. §713 (emphasis added). In short, a court's decision to invalidate an agency's action for violation of the Sunshine Act is discretionary, not obligatory. *Borough of East McKeesport v. Special/Temporary Civil Service Commission of Borough of East McKeesport*, 942 A.2d 274, 280 (Pa. Cmwlth. 2008).

In determining that the Commissioners could agree to a settlement during an executive session, the trial court relied on *Kennedy*. There, the petitioner challenged a zoning hearing board's meeting during a recess after a hearing on the Pennsylvania Turnpike Commission's application for a variance to increase the height of a radio tower. During the recess, a compromise was reached behind closed doors. The Supreme Court determined that the zoning hearing board's discussions

12

during the recess constituted private deliberations that were protected under the Sunshine Act. 834 A.2d at 1121. The Supreme Court opined that the zoning hearing board was serving a quasi-judicial function by engaging in fact-finding and deliberative functions in a manner similar to a court. *Id.* at 1117. The interests of the public were found to be advanced by the ability of the board to freely exchange ideas and opinions without being forced to operate in a fishbowl. *Id.* at 1118 n.28. The Court continued:

> As an agency characterized predominantly by judicial characteristics and functions, it is particularly appropriate for zoning boards to deliberate privately. The necessity of collegiality to group decision-making of the highest quality is well established as is the degree to which collegiality and public deliberations are incompatible. The subjects to which zoning boards must apply their statutory authority increase the necessity both of collegiality and privacy.

*Id.* at 1115-16. The *Kennedy* Court recognized that "quasi-judicial deliberations are a proper subject of a private executive session" and further recognized that straw votes may be permissible in executive session. *Id.* at 1123 (citing *Morning Call, Inc. v. Board of School Directors of Southern Lehigh School District*, 642 A.2d 619 (Pa. Cmwlth. 1994)). Moreover, immediately following the deliberative executive session, the zoning hearing board publicly voted on the compromise. *Id.* at 1125. The Supreme Court opined that such action would otherwise "'cure' the effect of prior formal action taken unlawfully in private." *Id.*

The Township argues that the trial court's reliance on *Kennedy* is misplaced because the Supreme Court's analysis centered on the zoning hearing board's role as a quasi-judicial body, which is not the case here. Further, unlike in *Kennedy*, the Commissioners never publicly voted on the agreement following

13

executive session. We agree that *Kennedy* is inapposite here. Although the Commissioners could privately consult with their attorney regarding the strategy to settle pending litigation during executive session, 65 Pa. C.S. §708(a)(4), the Commissioners were required to take official action on the settlement at an open meeting, 65 Pa. C.S. §708(c), which never occurred.

The Township maintains that this Court's decision in *Framlau* is more on point. The *Framlau* case involved proposed settlement terms placed on the record mid-trial, agreed to by the school board president and recommended by counsel. However, the terms were never approved by the board at a school board meeting as required by the Public School Code. Under the Public School Code, "[a] majority of the members of a board of school directors constitutes a quorum. Lacking a quorum present at any meeting, the board may not transact any business at such meeting." *Framlau*, 328 A.2d at 869; *see* Section 422 of the Public School Code, 24 P.S. §4-422. This Court opined:

> School directors *can bind the district they represent only when they act in their official character and in accordance with the requirements of the [Public School] Code*. It is the general rule that where formal action is necessary to bind a school district such a requirement must be met in order to predicate liability. *In the absence of a compliance with the applicable statutory provisions pertaining to the mode by which a board of school directors may make a contract, no enforceable contract will result*.

328 A.2d at 870 (citations omitted) (emphasis added).

On this basis, the Township argues that the Commissioners, having failed to comply with the Sunshine Act, could not make an enforceable contract. We disagree. The crux of the matter in *Framlau* was whether the school board president, acting alone, could enter a settlement agreement binding the school board without

14

the board's consent in violation of the Public School Code. This noncompliance went to the core of the agreement's validity because the governing body – the school board – never agreed to the settlement agreement. Consequently, there was no meeting of the minds between the contracting parties. Thus, the agreement was not valid and could not be enforced. Such is not the case here.

Unlike in *Framlau*, the governing body herein – the Commissioners – twice agreed to the settlement, albeit during executive sessions. The Commissioners conveyed approval of the settlement to Landowners, as well as the trial court, through counsel. This finding is supported by the email exchanges of counsel, which are not contested. Indeed, the Township admits that its Commissioners discussed and accepted the terms of the settlement during executive session and communicated the same, through its Solicitor, to Landowners. Under contract law, there was a meeting of the minds regarding the material terms of the settlement. The Settlement Agreement expressed the intention of the parties to settle the case and was valid and binding despite the absence of any writing or formality.

As for the Commissioners' failure to comply with the requirements of the Sunshine Act, such does not warrant the automatic nullification of the Settlement Agreement. 65 Pa. C.S. §713. Indeed, invalidation of official action taken in violation of the Sunshine Act is not axiomatic, but rather discretionary. *Id.*; *see Borough of East McKeesport*, 942 A.2d at 280; *see also Keenheel v. Pennsylvania Securities Commission*, 579 A.2d 1358, 1361 (Pa. Cmwlth. 1990) (a violation of the former Sunshine Act[11] that occurred when the Pennsylvania Securities Commission voted in executive session to accept agreement to settle discrimination action brought by former employee did not warrant setting aside agreement, absent any

---

[11] Act of July 3, 1986, P.L. 388, *as amended*, formerly 65 P.S. §§271-286, repealed by the Act of October 15, 1998, P.L. 729.

15

claim by employee that he was injured by the violation). Given the protracted history of the case, Township Solicitor's representations to opposing counsel and the trial court regarding the status of the settlement, and Landowners' good faith reliance on the settlement, we conclude that the trial court did not abuse its discretion by enforcing the Settlement Agreement.[12]   To conclude otherwise and allow the Township to unilaterally nullify the agreement under the guise of a Sunshine Act violation would perpetrate an injustice upon the Landowners who have reasonably relied on the Township's representations regarding the Settlement Agreement.

As for the Township's argument that Township Solicitor was not authorized to bind the Township to the agreement, this argument is belied by the facts. Before an attorney may agree to a settlement, he must have actual authority to settle from his clients. *Rothman v. Fillette*, 469 A.2d 543, 545 (Pa. 1983). The ordinary employment of an attorney to represent a client with respect to litigation does not confer upon the attorney the implied or apparent authority to bind the client to a settlement or compromise, and the attorney cannot do so in the absence of such express authority. *Starling v. West Erie Avenue Building & Loan*, 3 A.2d 387 (Pa. 1939); *Garnet v. D'Alonzo*, 422 A.2d 1241, 1242 (Pa. Cmwlth. 1980).

Here, Township Solicitor's authority to settle was clearly expressed by the Commissioners following their meeting. In an email dated October 10, 2018, Solicitor stated, "The [Commissioners] approved the settlement last night." In a later email dated December 12, 2018, Township Solicitor confirmed that the

---

[12]   In addition, we note that the settlement was reached under the supervision of the trial court. This Court has long held that court-approved settlements of zoning issues are lawful. *See Miravich v. Township of Exeter, Berks County*, 54 A.3d 106, 112 (Pa. Cmwlth. 2012); *Yaracs v. Summit Academy*, 845 A.2d 203, 209 n.6 (Pa. Cmwlth. 2004); *Boeing Company v. Zoning Hearing Board*, 822 A.2d 153, 161 (Pa. Cmwlth. 2003); *Summit Township Taxpayers Association v. Summit Township Board of Supervisors*, 411 A.2d 1263, 1266 (Pa. Cmwlth. 1980); *Al Monzo Construction Co. v. Monroeville Borough*, 289 A.2d 496 (Pa. Cmwlth. 1972).

16

Commissioners had agreed to the language of the Settlement Agreement. R.R. at 37a. Thus, Township Solicitor did not act on its own by entering the Settlement Agreement but was duly authorized by its client to do so.

For these reasons, we conclude that the trial court did not err in granting Landowners' Motion upon determining that the Settlement Agreement is an enforceable contract. Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott and Joan Baribault        :
                                      :
            v.                 : No. 1211 C.D. 2019
                                        :
Zoning Hearing Board of     :
Haverford Township and      :
Haverford Township         :
                                        :
Appeal of: Haverford Township  :

O R D E R

AND NOW, this 13th day of July, 2020, the order of the Court of Common Pleas of Delaware County, dated July 29, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge